Steve W. Berman (pro hac vice to be filed)
Sean R. Matt (pro hac vice to be filed)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com

Christopher R. Pitoun (SBN 290235)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
301 North Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
christopherp@hbsslaw.com

*Counsel for Plaintiffs and Class*

[Additional Counsel listed on Signature Page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| DAVID LUCAS, DEBORAH BENNETT, MARCHAE WINSTON, STEFANI POBLETE TAYLOR, LELA TERREL STRONG, PAIGE HELSEL, RACHEL DUFFIN, KRISTINA MCKNIGHT, GLENN HELMLY, NOLAN GLENNON, DERRICK BECKWITH, GLENN LATIMER, REGINA WILSON, MARTHA HARDWELL, JILL FISHER, LAURA ROBERTS, KASEY WEINFURTER, MOLLY O'CONNOR, CONNIE KESNER, ANNETTE DOUGLAS, JACQUELYNNE SUTTON, THOMAS DEHLER,  JOHN POPE, LEXII CUMMINGS, SHEA DONAHUE, SHANA EBERHARDT, TIFFANY DEVONISH, CELESTE JACOBS, BRYAN ROBERTS, BRIAN HELM, | No. 22-cv-02090 <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

1
2

CAROLYN CATLOS, and MICHAEL SCALISE, on behalf of themselves and all others similarly situated,

3

4

                                    Plaintiffs,

5

        v.

6

KIA AMERICA, INC., a California corporation,

7

8

and

9

HYUNDAI MOTOR AMERICA, a California corporation,

10

                                    Defendants.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      NATURE OF THIS ACTION .................................................................. 1

II.     JURISDICTION AND VENUE ............................................................... 2

III.    PARTIES .................................................................................................. 2

      A.      Plaintiffs ....................................................................................... 2

      B.      Defendants .................................................................................. 28

IV.     FACTUAL ALLEGATIONS ................................................................. 29

V.      CHOICE OF LAW ALLEGATIONS ................................................... 32

VI.     CLASS ACTION ALLEGATIONS ...................................................... 33

VII.    CLAIMS ................................................................................................ 37

      A.      Claims Brought on Behalf of the Nationwide Class ............................. 37

COUNT I BREACH OF IMPLIED WARRANTY (BASED ON
      CALIFORNIA LAW) ............................................................... 37

COUNT II VIOLATIONS OF MAGNUSON MOSS WARRANTY ACT,
      15 U.S.C. §§ 2301 ................................................................... 41

COUNT III UNJUST ENRICHMENT ..................................................... 43

COUNT IV VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL
      REMEDIES ACT (CAL. CIV. CODE § 1750, *ET SEQ.*) .............................. 45

COUNT V VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION
      LAW (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*) .............................. 49

COUNT VI FRAUD BY CONCEALMENT (BASED ON CALIFORNIA
      LAW).......................................................................................... 51

COUNT VII BREACH OF IMPLIED WARRANTY OF
      MERCHANTABILITY (CAL. COM. CODE § 2314)................................... 54

      B.      Claims Brought on Behalf of Alabama Class .............................. 55

COUNT VIII VIOLATION OF THE ALABAMA DECEPTIVE TRADE
      PRACTICES ACT (ALA. CODE § 8-19-1 ET SEQ.) ................................. 55

COUNT IX BREACH OF THE IMPLIED WARRANTY OF
      MERCHANTABILITY (ALA. CODE § 7-2-314)....................................... 57

      C.      Claims Brought on Behalf of the Arkansas Class.................................. 58

COUNT X VIOLATIONS OF THE DECEPTIVE TRADE PRACTICE
ACT (ARK. CODE ANN. § 4-88-101, *ET SEQ.*) .............................................. 58

COUNT XI BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY (ARK. CODE ANN. § 4-2-314)............................... 59

    D.    Claims Brought on Behalf of California Class ...................................... 60

COUNT XII VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL
REMEDIES ACT (CAL. CIV. CODE § 1750, *ET SEQ.*) .............................. 60

COUNT XIII VIOLATIONS OF CALIFORNIA'S UNFAIR
COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200, *ET
SEQ.*)............................................................................................................. 63

COUNT XIV FRAUD BY CONCEALMENT (BASED ON CALIFORNIA
LAW)............................................................................................................. 66

COUNT XV BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (CAL. COM. CODE § 2314).................................... 68

    E.    Claims Brought on Behalf of Delaware Class ...................................... 70

COUNT XVI VIOLATION OF THE DELAWARE CONSUMER FRAUD
ACT (6 DEL. CODE § 2513, *ET SEQ.*)............................................................ 70

COUNT XVII BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY (6 DEL. CODE § 2-314)........................................... 71

    F.    Claims Brought on Behalf of Georgia Class.......................................... 72

COUNT XVIII VIOLATION OF THE GEORGIA FAIR BUSINESS
PRACTICES ACT........................................................................................ 72

COUNT XIX BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (GA. CODE. ANN. §§ 11-2-314 AND 11-
2A-212)......................................................................................................... 73

    G.    Claims Brought on Behalf of the Illinois Class .................................... 74

COUNT XX VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND
DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1, *ET
SEQ*. AND 720 ILCS 295/1A) ......................................................................... 74

COUNT XXI BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY (810 ILCS §§ 5/2-314 AND 5/2A-212) .................. 75

    H.    Claims Brought on Behalf of the Indiana Class ................................... 77

COUNT XXII VIOLATION OF THE INDIANA DECEPTIVE
CONSUMER SALES ACT (IND. CODE § 24-5-0.5-3)............................... 77

COUNT XXIII BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY (IND. CODE § 26-1-2-314)..................................... 80

I. Claims Brought on Behalf of the Kentucky Class .................................. 81

COUNT XXIV VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT (KY. REV. STAT. § 367.110, *ET SEQ.*) ..................... 81

COUNT XXV BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (KY. REV. STAT. § 355.2-314) ........................... 83

J. Claims Brought on Behalf of the Maryland Class ................................ 85

COUNT XXVI VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT (MD. CODE, COM. LAW § 13-101, ET SEQ.) .......... 85

COUNT XXVII BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (MD. CODE, COM. LAW § 2-314) ...................... 87

K. Claims Brought on Behalf of the Massachusetts Class ........................ 88

COUNT XXVIII VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECT ACT (MASS. GEN. LAWS CH. 93A) ................ 88

COUNT XXIX BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (MASS. GEN. LAWS CH. 106, § 2-314) ............... 89

L. Claims Brought on Behalf of the Michigan Class ................................ 90

COUNT XXX VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT (MICH. COMP. LAWS § 445.901 *ET SEQ.*) .............. 90

COUNT XXXI BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (MICH. COMP. LAWS § 440.2314) ..................... 92

M. Claims Brought on Behalf of the Minnesota Class .............................. 93

COUNT XXXII VIOLATION OF THE MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT (MINN. STAT. § 325D.43-48, *ET SEQ.*) ........................................................................... 93

COUNT XXXIII VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT (MINN. STAT. § 325F.68, *ET SEQ.*) .............. 94

COUNT XXXIV BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (MINN. STAT. § 336.2-314).................................. 95

N. Claims Brought on Behalf of the North Carolina Class ....................... 97

O. Claims Brought on Behalf of the Ohio Class ................................... 100

COUNT XXXVII VIOLATIONS OF THE CONSUMER SALES PRACTICES ACT (OHIO REV. CODE §§ 1345.01, ET SEQ) .................. 100

COUNT XXXVIII BREACH OF IMPLIED WARRANTY IN TORT (BASED ON OHIO LAW) .......................................................... 103

P. Claims Brought on Behalf of the Pennsylvania Class ........................ 104

COUNT XXXIX VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (73 P.S. § 201-1, ET SEQ.) ........................................................................... 104

COUNT XL BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (PA. U.C.C. § 2314) ................................. 106

Q.      Claims Brought on Behalf of the Rhode Island Class ......................... 107

COUNT XLI VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES  AND CONSUMER PROTECTION ACT (R.I. GEN. LAWS § 6-13.1, *ET SEQ.*) ................................................................. 107

COUNT XLII BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (R.I. GEN. LAWS § 6A-2-314) ........................... 108

R.      Claims Brought on Behalf of the Tennessee Class .............................. 109

COUNT XLIII VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT OF 1977 (TENN. CODE ANN. § 47-18-101, *ET SEQ.*) ........................................................................................... 109

COUNT XLIV BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (TENN. CODE §§ 47-2-314 AND 47-2A-212) ........................................................................................... 110

S.      Claims Brought on Behalf of the Texas Class ..................................... 111

COUNT XLV VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT (TEX. BUS. & COM. CODE §§ 17.41, *ET SEQ.*) ............................... 111

COUNT XLVI BREACH OF IMPLIED WARRANTY  (BASED ON TEXAS LAW) ......................................................................... 114

T.      Claims Brought on Behalf of the Wisconsin Class .............................. 115

COUNT XLVII VIOLATION OF WISCONSIN DECEPTIVE TRADE PRACTICES ACT (WIS. STAT. § 100.18) ...................................... 115

COUNT XLVIII BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (WISC. STAT. § 402.314)......................................... 116

PRAYER FOR RELIEF ........................................................................ 116

JURY DEMAND .................................................................................. 117

All allegations made in this Complaint are based upon information and belief except those allegations that pertain to Plaintiffs, which are based on personal knowledge. Each allegation in this Complaint either has evidentiary support or, alternatively, pursuant to Federal Rule of Civil Procedure 11(b)(3) is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## I.     NATURE OF THIS ACTION

1.     Plaintiffs bring this proposed class action for damages and injunctive relief on behalf of themselves and all other persons and entities nationwide who purchased or leased 2011-2022 Kia vehicles or 2011-2022 Hyundai vehicles equipped with traditional "insert-and-turn" steel key ignition systems (the "Vehicles or "Class Vehicles") manufactured by defendant Kia America, Inc. ("Kia") or Hyundai Motor America ("Hyundai") (collectively, "Defendants"). Unlike most vehicles, the Class Vehicles are not equipped with an "immobilizer" preventing them from being started unless a code is transmitted from the Vehicle's specific smart key.

2.     This security vulnerability (the "Defect") makes the Vehicles incredibly easy to steal, allowing thieves to steal Vehicles by simply opening the steering columns and using a common USB charging cord or similar metal object to start the engine.

3.     Viral videos on TikTok and YouTube give step-by-step instructions on how to steal Class Vehicles without a key, and reports of stolen Kia and Hyundai Vehicles have skyrocketed across the country. In fact, the "Kia Challenge," widely shared on social media platforms, dares people to break in and then use a USB cord to start the cars. The videos show teens and young adults going for joy rides and, in some cases, even abandoning or crashing the cars. The incidents have turned dangerous, with suspects and bystanders being seriously injured or killed following unsafe driving and crashes related to the thefts.

4.     Defendants have long known or should have known of the Defect from multiple sources. According to Police, thieves have been exploiting a security flaw in

Kia vehicles made since 2011 and Hyundai vehicles made since 2011. Yet Defendants failed to disclose and actively concealed the Defect from the public, and continue to manufacture, distribute, and sell the Vehicles without disclosing the Defect.

5.     Plaintiffs bring this action for violation of relevant state consumer protection acts and for breach of implied warranties on behalf of a nationwide class and state classes of Vehicle lessees and owners. Plaintiffs seek damages and equitable relief on behalf of themselves and all others similarly situated.

## II.     JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and because this is a class action in which the members of the classes and Defendants are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendants are citizens of California with headquarters located in this district.

## III.     PARTIES

### A.     Plaintiffs

8.     David Lucas is an Alabama citizen residing in Birmingham, Alabama.

9.     Plaintiff Lucas purchased a new 2021 Kia Sportage on or about December 18, 2021, from Riverchase Kia in Pelham, Alabama. Plaintiff Lucas paid approximately $22,000.00 to purchase the Vehicle.

10.     In order to start Plaintiff Lucas' Vehicle, a traditional key must be inserted into the ignition.

11.     Defendants manufactured Plaintiff Lucas' Vehicle without an immobilizer.

12.     Because Plaintiff Lucas' Vehicle contains the Defect, Plaintiff Lucas is concerned that his vehicle will be stolen.

13.     Because Plaintiff Lucas' Vehicle contains the Defect, and the Defect was present at the time he purchased the Vehicle but was not disclosed, Plaintiff Lucas paid more for the Vehicle than he would have had Defendants disclosed the Defect prior to his purchase.

14.     Further, because Plaintiff Lucas' Vehicle contains the Defect, the resale value of Plaintiff Lucas' Vehicle has been diminished because consumers now know that these Vehicles are easy to steal. Accordingly, consumers will not pay what they would otherwise be willing to pay if these Vehicles did not contain the Defect.

15.     Plaintiff Lucas has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, the diminished resale value of his Vehicle and the amount he overpaid for the Vehicle at purchase because the Defect was not disclosed.

16.     Deborah Bennett is an Arkansas citizen residing in North Little Rock, Arkansas.

17.     Plaintiff Bennett purchased three new Kia Soul vehicles, model years 2017, 2018, and 2020.

18.     In order to start all of Plaintiff Bennett's Vehicles, a traditional key must be inserted into the ignition.

19.     Defendants manufactured Plaintiff Bennett's Vehicles without an immobilizer.

20.     Because Plaintiff Bennett's Vehicles contain the Defect, Plaintiff Bennett is concerned that her Vehicle will be stolen.

21.     Because Plaintiff Bennett's Vehicles contained the Defect, and the Defect was present at the time she purchased the Vehicles but was not disclosed, Plaintiff Bennett paid more for the Vehicle than she would have had Defendants disclosed the Defect prior to her purchase.

22.     Further, because Plaintiff Bennett's Vehicles contained the Defect, the resale value of Plaintiff Bennett's Vehicle has been diminished because consumers now know that these Vehicles are easy to steal. Accordingly, consumers will not pay what they would otherwise be willing to pay if these Vehicles did not contain the Defect.

23.     Plaintiff Bennett has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, the diminished resale value of her Vehicles, and the amount she overpaid for the Vehicles at purchase because the Defect was not disclosed.

24.     Marchae Winston is a California citizen residing in Bellflower, California.

25.     Plaintiff Winston leased a new 2022 Kia Sportage in July 2021 from Kia of Carson in Carson, California.

26.     In order to start Plaintiff Winston's Vehicle, a traditional key must be inserted into the ignition.

27.     Defendants manufactured Plaintiff Winston's Vehicle without an immobilizer.

28.     On January 14, 2022, and again sometime between the afternoon of August 27, 2022, and the morning of August 29, 2022, thieves stole Plaintiff Winston's Vehicle.

29.     In the January 2022 theft, Plaintiff Winston's Vehicle was gutted: the catalytic converter and stereo were stolen, all of the ignition wiring was cut, and the sideview mirrors were damaged. The Vehicle was repaired after the January theft at a cost of $10,950.83 and was returned to her in April 2022. Plaintiff Winston's Vehicle has not been recovered from the August 2022 theft.

30.     While Plaintiff Winston had insurance to cover the cost of the repairs from the January theft, she was forced to pay her policy's $1,000 deductible. Additionally, she was forced to pay $910 for rental car charges and $305.75 for Uber charges while her Vehicle was being repaired. As to the August theft, Plaintiff Winston's insurer has

threatened not to pay to repair the Vehicle if it is recovered because the cost of the January repairs was so high, and because her Vehicle is "high risk."

31.   Plaintiff Winston has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, her insurance deductible, and overpayment and diminished value of the Vehicle.

32.   Stefani Poblete Taylor is a California citizen residing in Cerritos, California.

33.   Plaintiff Poblete Taylor purchased a new 2013 Hyundai Elantra on or about May 1, 2012, from Commerce Hyundai in Commerce, California. Plaintiff Poblete Taylor paid approximately $19,000.00 to purchase the Vehicle.

34.   In order to start Plaintiff Poblete Taylor's Vehicle, a traditional key must be inserted into the ignition.

35.   Defendants manufactured Plaintiff Poblete Taylor's Vehicle without an immobilizer.

36.   On June 30, 2022, Plaintiff Poblete Taylor's Vehicle was stolen from the Long Beach Exchange in Long Beach, California. Plaintiff Poblete Taylor was there to get lunch and was away from her Vehicle for about an hour. When she returned to where the Vehicle was parked, it was gone. Plaintiff Poblete Taylor called the police and they came and took a report.

37.   Plaintiff Poblete Taylor's Vehicle was located a week later in Compton, California. Plaintiff Poblete Taylor's Vehicle was completely stripped and everything of value was gone. Even the Vehicle's tires were gone. Plaintiff's Poblete Taylor's Vehicle was a total loss.

38.   Because Plaintiff Poblete Taylor's Vehicle contains the Defect, and the Defect was present at the time she purchased the Vehicle but was not disclosed, Plaintiff Taylor paid more for the Vehicle than she would have had Defendants disclosed the Defect prior to her purchase.

39.    Plaintiff Poblete Taylor has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, the diminished resale value of her Vehicle, the amount she overpaid for the Vehicle at purchase because the Defect was not disclosed, and the unanticipated cost of having to purchase a new vehicle after the loss.

40.    Lela Terrel Strong is a California citizen residing in West Covina, California.

41.    Plaintiff Strong purchased a used 2016 Hyundai Tucson in September 2019 from Russell Westbrook Hyundai of Anaheim in Anaheim, California. Plaintiff Strong paid a $3,000.00 down payment and is paying $486.00 a month towards the vehicle.

42.    In order to start Plaintiff Strong's Vehicle, a traditional key must be inserted into the ignition.

43.    Defendants manufactured Plaintiff Strong's Vehicle without an immobilizer.

44.    On September 7, 2022, Plaintiff Strong's Vehicle was stolen in West Covina, California.

45.    When the Vehicle was subsequently located, it was crashed and totaled. All told, the Vehicle suffered a total loss.

46.    While Plaintiff Strong's insurer will provide a check for the total loss of the vehicle once the claim is processed, Plaintiff Strong has not found a replacement car yet, and cannot afford a new vehicle until she receives the payment. Plaintiff Strong's insurer covers $30 per day on her rental car, but $30 per day does not cover a comparable vehicle to what Plaintiff Strong needs, so she is incurring additional daily cost for the rental car. In total, Plaintiff Strong has incurred approximately $1,000.00 for the rental car. Plaintiff Strong also had to miss one day of work on the day of the theft.

47.    Plaintiff Strong has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, her insurance

deductible, the cost of a rental car, and overpayment and diminished value of the Vehicle.

48.     Paige Helsel is a California citizen residing in Rancho Cucamonga, California.

49.     Plaintiff Helsel purchased a new 2021 Kia Forte in 2021 from Pomona Kia in Pomona, California, for $18,000.

50.     In order to start Plaintiff Helsel's Vehicle, a traditional key must be inserted into the ignition.

51.     Defendants manufactured Plaintiff Helsel's Vehicle without an immobilizer.

52.     Because Plaintiff Helsel's Vehicle contains the Defect, Plaintiff Helsel is concerned that her Vehicle will be stolen.

53.     Because Plaintiff Helsel's Vehicle contains the Defect, and the Defect was present at the time she purchased the Vehicle but was not disclosed, Plaintiff Helsel paid more for the Vehicle than she would have had Defendants disclosed the Defect prior to her purchase.

54.     Further, because Plaintiff Helsel's Vehicle contains the Defect, the resale value of Plaintiff Helsel's Vehicle has been diminished because consumers now know that these Vehicles are easy to steal. Accordingly, consumers will not pay what they would otherwise be willing to pay if these Vehicles did not contain the Defect.

55.     Plaintiff Helsel has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, the diminished resale value of her Vehicle and the amount she overpaid for the Vehicle at purchase because the Defect was not disclosed.

56.     Rachel Duffin is a Colorado citizen residing in Denver, Colorado.

57.    Plaintiff Duffin purchased a new 2018 Hyundai Tucson in August 2021 from Gary Lang Kia in McHenry, Illinois. Plaintiff Duffin paid a $2,000.00 down payment and is making a monthly payment of $311.00 towards the Vehicle.

58.    In order to start Plaintiff Duffin's Vehicle, a traditional key must be inserted into the ignition.

59.    Defendants manufactured Plaintiff Duffin's Vehicle without an immobilizer.

60.    On September 14, 2022, Plaintiff Duffin's Vehicle was stolen in Denver, Colorado.

61.    The Vehicle has not yet been recovered by police.

62.    While Plaintiff Duffin's insurer has covered the cost of a rental car for 30 days, Plaintiff Duffin had to pay a supplement of $7 per day for the rental car. Plaintiff Duffin estimates she has already paid in excess of $200 for the rental car out of pocket. In addition, Plaintiff Duffin estimates personal items in the car are valued at approximately $100, including phone chargers, jumper cables, and tools. Plaintiff Duffin has also had to use Uber and Lyft services to get to work and the grocery store.

63.    Plaintiff Duffin has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, her insurance deductible, and overpayment and diminished value of the Vehicle.

64.    Kristina McKnight is a Delaware citizen residing in Dover, Delaware.

65.    Plaintiff McKnight purchased a used 2015 Kia Optima in February 2021 from Felton Holly Kia in Felton, Delaware.

66.    In order to start Plaintiff McKnight's Vehicle, a traditional key must be inserted into the ignition.

67.    Defendants manufactured Plaintiff McKnight's Vehicle without an immobilizer.

68.    On October 1, 2022, thieves stole Plaintiff McKnight's Vehicle from outside her apartment building.

69.    When Plaintiff McKnight's Vehicle was subsequently located, it had damage to its steering column and ignition as a result of the theft.

70.    While Plaintiff McKnight has insurance, the damage to the Vehicle (approximately $1,300) is less than her $2,000 deductible. Accordingly, Plaintiff is required to pay the cost of repairs and the cost of any rental vehicle during the pendency of the repairs.

71.    Plaintiff McKnight has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, lost wages, the cost of the repairs, and overpayment and diminished value of the Vehicle.

72.    Glenn Helmly is a Georgia citizen residing in Reidsville, Georgia.

73.    Plaintiff Helmly purchased a new 2017 Hyundai Sante Fe Sport in December 2016 from Savannah Hyundai in Savannah, Georgia, for $28,000.00. Plaintiff Helmly pays $540 a month to pay off the Vehicle.

74.    In order to start Plaintiff Helmly's Vehicle, a traditional key must be inserted into the ignition.

75.    Defendants manufactured Plaintiff Helmly's Vehicle without an immobilizer.

76.    Because Plaintiff Helmly's Vehicle contains the Defect, Plaintiff Helmly is concerned that his Vehicle will be stolen.

77.    Because Plaintiff Helmly's Vehicle contains the Defect, and the Defect was present at the time he purchased the Vehicle but was not disclosed, Plaintiff Helmly paid more for the Vehicle than he would have had Defendants disclosed the Defect prior to his purchase.

78.    Further, because Plaintiff Helmly's Vehicle contains the Defect, the resale value of Plaintiff Helmly's Vehicle has been diminished because consumers now know

that these Vehicles are easy to steal. Accordingly, consumers will not pay what they would otherwise be willing to pay if these Vehicles did not contain the Defect.

79.     Plaintiff Helmly has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, the diminished resale value of his Vehicle, and the amount he overpaid for the Vehicle at purchase because the Defect was not disclosed.

80.     Nolan Glennon is an Illinois citizen residing in Downers Grove, Illinois.

81.     Plaintiff Glennon purchased a new 2019 Kia Forte LXS on December 29, 2018, from Kia of Willowbrook of Willowbrook, Illinois.

82.     In order to start Plaintiff Glennon's Vehicle, a traditional key must be inserted into the ignition.

83.     Defendants manufactured Plaintiff Glennon's Vehicle without an immobilizer.

84.     On April 9, 2022, thieves stole Plaintiff Glennon's Vehicle in Milwaukee while he was on a trip.

85.     Plaintiff Glennon's Vehicle was recovered approximately 4-5 days later. Because Plaintiff Glennon was on a trip when his Vehicle was stolen, he had approximately $2,000 worth of personal possessions in his Vehicle, which were lost.

86.     While Plaintiff Glennon's insurer will pay for the loss of his Vehicle, Plaintiff Glennon was forced to pay approximately $200 for a rental car.

87.     Plaintiff Glennon has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, the cost of a rental car, and overpayment and diminished value of the Vehicle.

88.     Derrick Beckwith is an Illinois citizen residing in Chicago, Illinois.

89.     Plaintiff Beckwith purchased a new 2020 Kia Sportage in August 2019 from Berwin Kia in Berwin, Illinois, for $26,000.00. Plaintiff Beckwith traded in a 2015

Kia Optima. A monthly payment of $509.00 was made towards the vehicle until it was paid off in the Spring of 2022.

90.    In order to start Plaintiff Beckwith's Vehicle, a traditional key must be inserted into the ignition.

91.    Defendants manufactured Plaintiff Beckwith's Vehicle without an immobilizer.

92.    On August 23, 2022, Plaintiff Beckwith's Vehicle was stolen in Chicago, Illinois.

93.    When the Vehicle was subsequently located, its steering column was broken, the passenger window was smashed, the vehicle was ransacked, and his granddaughters' car seat was missing. All told, the Vehicle suffered approximately $4,600.00 in damage.

94.    While Plaintiff Beckwith's insurer will cover the costs of repair, Plaintiff Beckwith must pay his policy's $1,000 deductible. However, many of the parts that are needed to repair the Vehicle are back-ordered so the Vehicle was in the shop for approximately eight weeks. Plaintiff Beckwith had to pay approximately $90.00 a day for a rental vehicle for approximately one week but was without transportation for approximately three weeks.

95.    Plaintiff Beckwith has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, his insurance deductible, and overpayment and diminished value of the Vehicle.

96.    Glenn Latimer is an Illinois citizen residing in Chicago, Illinois.

97.    Plaintiff Latimer purchased a used 2020 Kia Sorento in November 2021 from Kia of Lincolnwood in Lincolnwood, Illinois, for $31,000.00. Plaintiff Latimer traded in a former vehicle in lieu of a down payment and received $6,000.00 towards the purchase of the Kia. A monthly payment of $536.03 is made on the vehicle.

98.   In order to start Plaintiff Latimer's Vehicle, a traditional key must be inserted into the ignition.

99.   Defendants manufactured Plaintiff Latimer's Vehicle without an immobilizer.

100.   On July 7, 2022, Plaintiff Latimer's Vehicle was broken into in Chicago, Illinois. The Vehicle had two smashed windows and the inside of the Vehicle was heavily vandalized.

101.   On July 17, 2022, Plaintiff Latimer's Vehicle was broken into a second time in Chicago, Illinois. The Vehicle again had two windows smashed, the steering wheel column was broken, the ignition switch was broken, and there was damage to the rear end of the vehicle. Plaintiff Latimer's Vehicle could not be started due to the damage to the ignition switch and had to be towed to the repair shop.

102.   All told, Plaintiff Latimer's Vehicle suffered approximately $7,000 in damage between the two break-in events and attempted theft of the vehicle.

103.   While Plaintiff Latimer's insurer will cover the costs of repair, Plaintiff Latimer must pay his policy's $500 deductible. However, he has had to cover the cost of a rental car, which has cost him approximately $1,000.00. In addition, Plaintiff Latimer had personal items damaged or stolen, including a car battery charger, and two vacuum cleaners which he uses for his job.

104.   Because Plaintiff Latimer's Vehicle contains the Defect, and the Defect was present at the time he purchased the Vehicle but was not disclosed, Plaintiff Latimer paid more for the Vehicle than he would have had Defendants disclosed the Defect prior to his purchase.

105.   Further, because Plaintiff Latimer's Vehicle contains the Defect, the resale value of Plaintiff Latimer's Vehicle has been diminished because consumers now know that these Vehicles are easy to steal. Accordingly, consumers will not pay what they would otherwise be willing to pay if these Vehicles did not contain the Defect.

106. To attempt to protect his Vehicle from theft, Plaintiff Latimer has purchased a steering wheel club to lock the vehicle up when he leaves it.

107. Plaintiff Latimer has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, his insurance deductible, the diminished resale value of his Vehicle, and the amount he overpaid for the Vehicle at purchase because the Defect was not disclosed.

108. Regina Wilson is an Illinois citizen residing in Belleville, Illinois.

109. Plaintiff Wilson purchased a used 2017 Kia Sorento in June 2022 from Suntrup Kia in St. Louis, Missouri, for $28,000.

110. In order to start Plaintiff Wilson's Vehicle, a traditional key must be inserted into the ignition.

111. Defendants manufactured Plaintiff Wilson's Vehicle without an immobilizer.

112. Because Plaintiff Wilson's Vehicle contains the Defect, Plaintiff Wilson is concerned that her Vehicle will be stolen.

113. Because Plaintiff Wilson's Vehicle contains the Defect, and the Defect was present at the time she purchased the Vehicle but was not disclosed, Plaintiff Wilson paid more for the Vehicle than she would have had Defendants disclosed the Defect prior to her purchase.

114. Further, because Plaintiff Wilson's Vehicle contains the Defect, the resale value of Plaintiff Wilson's Vehicle has been diminished because consumers now know that these Vehicles are easy to steal. Accordingly, consumers will not pay what they would otherwise be willing to pay if these Vehicles did not contain the Defect.

115. To attempt to protect her Vehicle from theft, in October 2022 Plaintiff Wilson has purchased a steering wheel club for roughly $50.00.

116. Plaintiff Wilson has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to,

the diminished resale value of her Vehicle, and the amount she overpaid for the Vehicle at purchase because the Defect was not disclosed.

117.   Martha Hardwell is an Illinois citizen residing in Phoenix, Illinois.

118.   Plaintiff Hardwell purchased a new 2020 Kia Soul in August 2021 from Evergreen Kia in Chicago, Illinois. Plaintiff Hardwell paid a $2,000.00 down payment and makes a monthly payment of $303.60 a month towards the Vehicle.

119.   In order to start Plaintiff Hardwell's Vehicle, a traditional key must be inserted into the ignition.

120.   Defendants manufactured Plaintiff Hardwell's Vehicle without an immobilizer.

121.   On August 20, 2022, Plaintiff Hardwell's Vehicle was stolen in Phoenix, Illinois.

122.   When Plaintiff Hardwell's Vehicle was subsequently located, it had been involved in an accident with extensive body damage. All told, Plaintiff Hardwell's Vehicle suffered a total loss.

123.   While Plaintiff Hardwell's insurer provided a check for the total loss of the Vehicle once the claim was processed, Plaintiff Hardwell had to put down $2,000 on a new vehicle in addition to the $8,000 check for the total loss. Plaintiff Hardwell had to rent a car for two weeks while waiting for the insurance carrier to process her claim, incurring approximately $400 in rental car expenses. In addition, Plaintiff Hardwell purchased a club for approximately $50 to protect her new car.

124.   Plaintiff Hardwell has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, her rental car expenses, and overpayment and diminished value of the Vehicle.

125.   Jill Fisher is an Indiana citizen residing in Ft. Wayne, Indiana.

126.   Plaintiff Fisher leased a new 2022 Kia Forte in March 2022 from Ft. Wayne Kia.

127.   In order to start Plaintiff Fisher's Vehicle, a traditional key must be inserted into the ignition.

128.   Defendants   manufactured   Plaintiff   Fisher's   Vehicle   without   an immobilizer.

129.   On July 24, 2022, thieves attempted to steal Plaintiff Fisher's Vehicle but were interrupted by Plaintiff Fisher's neighbors before they could complete the theft.

130.   Plaintiff Fisher's Vehicle had damage to the steering column as a result of the attempted theft.

131.   While Plaintiff Fisher's insurance policy will cover the costs of the repairs, Plaintiff Fisher must pay her policy's $500 deductible and was forced to pay approximately $300 for a car rental while the repairs were being performed.

132.   Plaintiff Fisher has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, her insurance deductible, and overpayment and diminished value of the Vehicle.

133.   Laura Roberts is an Indiana citizen residing in Sellersburg, Indiana.

134.   Plaintiff Roberts purchased a new 2021 Kia Forte from the Kia Store of Clarksville, Indiana, at the end of May or first of June 2021.

135.   In order to start Plaintiff Roberts's Vehicle, a traditional key must be inserted into the ignition.

136.   Defendants   manufactured   Plaintiff   Roberts's   Vehicle   without   an immobilizer.

137.   On September 17, 2022, thieves stole Plaintiff Roberts's Vehicle in Louisville, Kentucky.

138.   Plaintiff Roberts's Vehicle was recovered by police in Kentucky at or near a homicide scene and is on "police hold." Blood was found on or in her Vehicle. The police told her the Vehicle had extensive damage, including to the steering column.

139.   While Plaintiff Roberts has insurance, the damage to the Vehicle resulted in her insurer totaling the Vehicle. Accordingly, Plaintiff Roberts was required to pay off her existing loan and purchase a new vehicle. While the insurer was deciding what to do, and while Plaintiff Roberts was waiting to purchase a new vehicle, her insurer paid $25 a day for a rental car of up to $600 total, with Plaintiff Roberts responsible for all overages. Plaintiff Roberts missed a day of work as a result of the theft of her Vehicle and lost some of her possessions that were in the Vehicle when it was stolen.

140.   Plaintiff Roberts has suffered an ascertainable loss as a result of Defendant Kia's wrongful conduct associated with the Defect, including, but not limited to, lost wages and overpayment and diminished value of the Vehicle.

141.   Kasey Weinfurtner is a Kentucky citizen residing in Newport, Kentucky.

142.   Plaintiff Weinfurtner purchased a new 2020 Kia Sportage in July 2020 from Jake Sweeney Kia in Florence, Kentucky.

143.   In order to start Plaintiff Weinfurtner's Vehicle, a traditional key must be inserted into the ignition.

144.   Defendants manufactured Plaintiff Weinfurtner's Vehicle without an immobilizer.

145.   On July 30, 2022, thieves broke into and attempted to steal Plaintiff Weinfurtner's Vehicle in Clifton, Ohio.

146.   Plaintiff Weinfurtner's Vehicle's window was broken and her Vehicle had damage to the steering column as a result of the attempted theft.

147.   While Plaintiff Weinfurtner's policy will cover the costs of the repairs, Plaintiff Weinfurtner must pay her policy's $500 deductible.

148.   Plaintiff Weinfurtner has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, her insurance deductible, and overpayment and diminished value of the Vehicle.

149.   Molly O'Connor is a Maryland citizen residing in Hyattsville, Maryland.

150.   Plaintiff O'Connor purchased a used 2019 Kia Sorento LX in June 2020from Darcars Lanham Kia of Lanham, Maryland.

151.   In order to start Plaintiff O'Connor's Vehicle, a traditional key must be inserted into the ignition.

152.   Defendants manufactured Plaintiff O'Connor's Vehicle without an immobilizer.

153.   On September 25, 2022, thieves stole Plaintiff O'Connor's Vehicle from outside her residence.

154.   Plaintiff O'Connor's Vehicle was recovered on November 2, 2022, but, by then, Plaintiff had closed out with the insurer and turned the Vehicle over to the insurer. Plaintiff O'Connor had a months' old baby at the time of the theft so, in addition to her stolen Vehicle, she lost a car seat base, stroller, and various other items that were kept in her Vehicle.

155.   While Plaintiff O'Connor's insurer paid for the loss of her Vehicle, her policy has a $300 deductible that she was forced to pay. Moreover, Plaintiff O'Connor was forced to pay funds for a rental car.

156.   Plaintiff O'Connor has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, her insurance deductible, and overpayment and diminished value of the Vehicle.

157.   Connie Kesner is a Maryland citizen residing in Cumberland, Maryland.

158.   Plaintiff Kesner purchased a new 2016 Kia Forte.

159.   To start Plaintiff Kesner's Vehicle, a traditional key must be inserted into the ignition.

160.   Defendants manufactured Plaintiff Kesner's Vehicle without an immobilizer.

161.   Because Plaintiff Kesner's Vehicle contains the Defect, Plaintiff Kesner is concerned that her Vehicle will be stolen.

162.   Because Plaintiff Kesner's Vehicle contains the Defect, and the Defect was present at the time she purchased the Vehicle but was not disclosed, Plaintiff Kesner paid more for the Vehicle than she would have had Defendants disclosed the Defect prior to her purchase.

163.   Further, because Plaintiff Kesner's Vehicle contains the Defect, the resale value of Plaintiff Kesner's Vehicle has been diminished because consumers now know that these Vehicles are easy to steal. Accordingly, consumers will not pay what they would otherwise be willing to pay if these Vehicles did not contain the Defect.

164.   Plaintiff Kesner has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, the diminished resale value of her Vehicle, and the amount she overpaid for the Vehicle at purchase because the Defect was not disclosed.

165.   Annette Douglas is a Michigan citizen residing in Benton Harbor, Michigan.

166.   Plaintiff Douglas purchased a new 2021 Kia Sportage on October 31, 2020, from Gurley Leep Kia in Mishawaka, Indiana. Plaintiff Douglas traded in her previous vehicle, a 2015 Kia Soul, to cover a down payment and is paying approximately $340.00 a month to pay off the Vehicle.

167.   In order to start Plaintiff Douglas' Vehicle, a traditional key must be inserted into the ignition.

168.   Defendants manufactured Plaintiff Douglas' Vehicle without an immobilizer.

169.   On July 19, 2022, Plaintiff Douglas's Vehicle was stolen in Benton Harbor, Michigan.

170.   When the Vehicle was subsequently located, the back window was smashed out, the steering wheel column was broken and torn out, the ignition switch

was broken, and one wheel was damaged. All told, the Vehicle suffered approximately $7,000.00 in damage.

171.   While Plaintiff Douglas' insurer will cover the costs of repair, Plaintiff Douglas must pay her policy's $500 deductible. However, many of the parts that are needed to repair the Vehicle are back-ordered, so it will be in the shop indefinitely. Plaintiff Douglas' insurance company covered the rental car for 40 days. Plaintiff Douglas had to pay out of pocket for the rental car for one day. In addition, Plaintiff Douglas currently has to pay for rides to and from work, the grocery store, and church. Plaintiff Douglas also had numerous items in the car stolen or damaged during the theft, including her GPS, automatic starter, and prescription sunglasses.

172.   Plaintiff Douglas has suffered ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, her insurance deductible, payments for rides, theft of her personal property, and overpayment and diminished value of the Vehicle.

173.   Jacquelynne Sutton is a Minnesota citizen residing in Minneapolis, Minnesota.

174.   Plaintiff Sutton leased a new 2020 Kia Sportage in April 2020 from Brookland Park Kia in Brookland Park, Minnesota. Plaintiff Sutton paid a $750 down payment and is paying $448 a month to lease the Vehicle.

175.   In order to start Plaintiff Sutton's Vehicle, a traditional key must be inserted into the ignition.

176.   Defendants manufactured Plaintiff Sutton's Vehicle without an immobilizer.

177.   On September 23, 2022, Plaintiff Sutton's Vehicle was stolen in Minneapolis, Minnesota.

178.   When the Vehicle was subsequently located, the back window was smashed out, and the Vehicle was totaled in an accident. All told, the Vehicle suffered a total loss.

179.   While Plaintiff Sutton's insurer has paid off the balanced owed on her lease, Plaintiff Sutton has not found a replacement car yet, and cannot afford a new vehicle. Plaintiff Sutton has had to use Uber and Lyft, or pay a friend, to get to work and run basic errands such as going to the grocery store. Plaintiff Sutton's insurer covered about two weeks of a rental car, but Plaintiff Sutton has paid approximately $1,500.00 to repair a used family vehicle to be able to use once she no longer has the rental car.

180.   Plaintiff Sutton has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, out of pocket expenses, and overpayment and diminished value of the Vehicle.

181.   Thomas Dehler is a Minnesota citizen residing in Maple Grove, Minnesota.

182.   Plaintiff Dehler purchased a new 2015 Kia Sportage in October 2014 from Brookland Park Kia in Brookland Park, Minnesota for $24,944.00. Plaintiff Dehler paid $8,000 for a down payment, received $3,200 for a trade-in, and had to pay $287 a month to finance the vehicle. Plaintiff Dehler paid off the vehicle within two months of the date of purchase.

183.   In order to start Plaintiff Dehler's Vehicle, a traditional key must be inserted into the ignition.

184.   Defendants manufactured Plaintiff Dehler's Vehicle without an immobilizer.

185.   On June 29, 2022, Plaintiff Dehler's Vehicle was broken into and attempted to be stolen. The back window was smashed and the steering column was scratched. All told, the Vehicle suffered approximately $500 in damage.

186.   Plaintiff Dehler now pays an additional $50 per month to store his Vehicle in a garage.

187.   Because Plaintiff Dehler's Vehicle contains the Defect, and the Defect was present at the time he purchased the Vehicle but was not disclosed, Plaintiff Dehler paid more for the Vehicle than he would have had Defendants disclosed the Defect prior to his purchase.

188.   Further, because Plaintiff Dehler's Vehicle contains the Defect, the resale value of Plaintiff Dehler's Vehicle has been diminished because consumers now know that these Vehicles are easy to steal. Accordingly, consumers will not pay what they would otherwise be willing to pay if these Vehicles did not contain the Defect.

189.   To attempt to protect his Vehicle from theft, Plaintiff Dehler has  purchased a club for approximately $37 to use to protect the vehicle.

190.   Plaintiff Dehler has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, the damage to his Vehicle, the diminished resale value of his Vehicle, and the amount he overpaid for the Vehicle at purchase because the Defect was not disclosed.

191.   John Pope is a Minnesota citizen residing in Minneapolis, Minnesota.

192.   Plaintiff Pope purchased a used 2018 Kia Optima on or about April 16, 2021, from Luther Kia in Bloomington, Minnesota. Plaintiff Pope paid approximately $16,258.00 to purchase the Vehicle.

193.   In order to start Plaintiff Pope's Vehicle, a traditional key must be inserted into the ignition.

194.   Defendants manufactured Plaintiff Pope's Vehicle without an immobilizer.

195.   On June 14, 2022, Plaintiff Pope's Vehicle was stolen from the parking lot outside his residence in Minneapolis, Minnesota.

196.   When the Vehicle was subsequently located, the Vehicle's back window was broken and the steering column cladding was found removed.

197.   All told, the Vehicle suffered approximately $500.00 in damage. While Plaintiff Pope's insurer will cover the costs of repair, Plaintiff Pope must pay his policy's $500 deductible.

198.   Plaintiff Pope has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, his insurance deductible, and overpayment and diminished value of the Vehicle.

199.   Lexii Cummings is an Ohio citizen residing in Columbus, Ohio.

200.   Plaintiff Cummings purchased a used 2018 Hyundai Elantra in September 2021 from Germain Hyundai in Columbus, Ohio.

201.   In order to start Plaintiff Cummings's Vehicle, a traditional key must be inserted into the ignition.

202.   Defendants manufactured Plaintiff Cummings's Vehicle without an immobilizer.

203.   On or about August 11, 2022, thieves stole Plaintiff Cummings's Vehicle.

204.   When Plaintiff Cummings's Vehicle was recovered, it had a broken window and extensive damage to the ignition. All told, the Vehicle suffered approximately $7,200 in damage.

205.   While Plaintiff Cummings has insurance to cover the cost of the repairs, Plaintiff Cummings must pay her policy's $500 deductible and any rental car charges required beyond $30 a day for 30 days.

206.   Plaintiff Cummings has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, her insurance deductible, and overpayment and diminished value of the Vehicle.

207.   Shea Donahue is an Ohio citizen residing in East Liverpool, Ohio.

208.   Plaintiff Donahue purchased a new 2022 Kia Sportage in December 2011 from Taylor Kia Boardman in Boardman, Ohio, for $33,000.00. Plaintiff Donahue paid a $5,000 down payment and is paying $630 a month to pay off the vehicle.

209.   In order to start Plaintiff Donahue's Vehicle, a traditional key must be inserted into the ignition.

210.   Defendants manufactured Plaintiff Donahue's Vehicle without an immobilizer.

211.   Because Plaintiff Donahue's Vehicle contains the Defect, Plaintiff Donahue is concerned that her Vehicle will be stolen.

212.   Because Plaintiff Donahue's Vehicle contains the Defect, and the Defect was present at the time she purchased the Vehicle but was not disclosed, Plaintiff Donahue paid more for the Vehicle than she would have had Defendants disclosed the Defect prior to her purchase.

213.   Further, because Plaintiff Donahue's Vehicle contains the Defect, the resale value of Plaintiff Donahue's Vehicle has been diminished because consumers now know that these Vehicles are easy to steal. Accordingly, consumers will not pay what they would otherwise be willing to pay if these Vehicles did not contain the Defect.

214.   Plaintiff Donahue has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, the diminished resale value of her Vehicle and the amount she overpaid for the Vehicle at purchase because the Defect was not disclosed.

215.   Shana Eberhardt is a Pennsylvania citizen residing in Carnegie, Pennsylvania.

216.   Plaintiff Eberhardt purchased a certified pre-owned 2011 Kia Sorento in February 2015 from Monroeville Kia in Monroeville, Pennsylvania.

217.   In order to start Plaintiff Eberhardt's Vehicle, a traditional key must be inserted into the ignition.

218.   Defendants manufactured Plaintiff Eberhardt's Vehicle without an immobilizer.

219.   Because Plaintiff Eberhardt's Vehicle contains the Defect, Plaintiff Eberhardt is concerned that her Vehicle will be stolen.

220.   Further, because Plaintiff Eberhardt's Vehicle contains the Defect, the resale value of Plaintiff Eberhardt's Vehicle has been diminished because consumers now know that these Vehicles are easy to steal. Accordingly, consumers will not pay what they would otherwise be willing to pay if these Vehicles did not contain the Defect.

221.   Plaintiff Eberhardt has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, the diminished resale value of her Vehicle, and the amount she overpaid for the Vehicle at purchase because the Defect was not disclosed.

222.   Tiffany Devonish is a Rhode Island citizen residing in Providence, Rhode Island.

223.   Plaintiff Devonish purchased a used 2020 Kia Sportage LX in May or June 2021 from Wagner Kia of Shrewsbury of Shrewsbury, Massachusetts.

224.   In order to start Plaintiff Devonish's Vehicle, a traditional key must be inserted into the ignition.

225.   Defendants manufactured Plaintiff Devonish's Vehicle without an immobilizer.

226.   On the evening of September 13 or the morning of September 14, 2022, thieves stole Plaintiff Devonish's Vehicle.

227.   Plaintiff Devonish's Vehicle was recovered on September 16, 2022: a USB cord was in the ignition, the steering column was ripped out with wires showing, the rear driver side window was smashed, and the windshield wiper was broken. The damage to Plaintiff Devonish's Vehicle totaled $4,019.

228.   While Plaintiff Devonish's insurer will cover the cost of the repairs, her policy has a $500 deductible, which she was forced to pay. Moreover, Plaintiff Devonish was forced to pay $369.79 for rental car insurance while her Vehicle was being repaired.

229.   Plaintiff Devonish has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, her insurance deductible and overpayment and diminished value of the Vehicle.

230.   Celeste Jacobs is a Rhode Island citizen residing in Providence, Rhode Island.

231.   Plaintiff Jacobs purchased a used 2021 Kia Forte in October 2021 from Grieco Hyundai in Johnston, Rhode Island, for $25,000.00. Plaintiff Jacobs did not put money down on the Vehicle, but she is paying $549 a month to pay off the vehicle.

232.   In order to start Plaintiff Jacobs' Vehicle, a traditional key must be inserted into the ignition.

233.   Defendants manufactured Plaintiff Jacobs' Vehicle without an immobilizer.

234.   Because Plaintiff Jacobs' Vehicle contains the Defect, Plaintiff Jacobs is concerned that her Vehicle will be stolen.

235.   Because Plaintiff Jacobs' Vehicle contains the Defect, and the Defect was present at the time she purchased the Vehicle but was not disclosed, Plaintiff Jacobs paid more for the Vehicle than she would have had Defendants disclosed the Defect prior to her purchase.

236.   Further, because Plaintiff Jacobs' Vehicle contains the Defect, the resale value of Plaintiff Jacobs' Vehicle has been diminished because consumers now know that these Vehicles are easy to steal. Accordingly, consumers will not pay what they would otherwise be willing to pay if these Vehicles did not contain the Defect.

237.   Plaintiff Jacobs has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, the diminished resale value of her Vehicle, and the amount she overpaid for the Vehicle at purchase because the Defect was not disclosed.

238.   Bryan Roberts is a South Carolina citizen residing in Fort Mill, South Carolina.

239.   Plaintiff Roberts leased a new 2020 Kia Forte in September 2020 from Union County Kia in Monroe, North Carolina, for $21,300.00. Plaintiff Roberts paid a $1,500 down payment and paid $254 per month to lease the vehicle.

240.   In order to start Plaintiff Roberts' Vehicle, a traditional key must be inserted into the ignition.

241.   Defendants manufactured Plaintiff Roberts' Vehicle without an immobilizer.

242.   Because Plaintiff Roberts' Vehicle contains the Defect, Plaintiff Roberts is concerned that his Vehicle will be stolen.

243.   Because Plaintiff Roberts' Vehicle contains the Defect, and the Defect was present at the time he purchased the Vehicle but was not disclosed, Plaintiff Roberts paid more for the Vehicle than he would have had Defendants disclosed the Defect prior to his purchase.

244.   Further, because Plaintiff Roberts' Vehicle contains the Defect, the resale value of Plaintiff Roberts' Vehicle has been diminished because consumers now know that these Vehicles are easy to steal. Accordingly, consumers will not pay what they would otherwise be willing to pay if these Vehicles did not contain the Defect.

245.   Plaintiff Roberts has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, the diminished resale value of his Vehicle, and the amount he overpaid for the Vehicle at purchase because the Defect was not disclosed.

246.   Brian Helm is a Tennessee citizen residing in Memphis, Tennessee.

247.   Plaintiff Helm purchased a new 2022 Hyundai Kona in November 2021 from Wolfchase Hyundai in Memphis, Tennessee.

248.   In order to start Plaintiff Helm's Vehicle, a traditional key must be inserted into the ignition.

249.   Defendants manufactured Plaintiff Helm's Vehicle without an immobilizer.

250.   On September 2, 2022, thieves attempted to steal Plaintiff Helm's Vehicle in Memphis, Tennessee.

251.   The steering column in Plaintiff Helm's Vehicle was damaged in the attempted theft.

252.   While Plaintiff Helm's insurer will cover the costs of repair, Plaintiff Helm must pay his policy's $750 deductible. Additionally, Plaintiff Helm is an Uber driver. Without his Vehicle, he was unable to do his job. Plaintiff Helm has been forced to rent a replacement vehicle at a cost of approximately $375 a week.

253.   Plaintiff Helm has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, his insurance deductible, and overpayment and diminished value of the Vehicle.

254.   Carolyn Catlos is a Michigan citizen residing in Detroit, Michigan.

255.   Plaintiff Catlos purchased a new 2015 Kia Soul in June 2015 from Fredy Kia in Houston, Texas.

256.   In order to start Plaintiff Catlos's Vehicle, a traditional key must be inserted into the ignition.

257.   Defendants manufactured Plaintiff Catlos's Vehicle without an immobilizer.

258.   On the morning of October 26, 2022, thieves stole Plaintiff Catlos's Vehicle from outside her residence.

259.   Plaintiff Catlos's Vehicle was recovered on October 31, 2022 but it was so damaged that her insurer declared the Vehicle a total loss. Although Plaintiff Catlos has insurance, the amount she was paid by her insurer was reduced by $1,000, the cost of

her deductible. Additionally, as a result of the theft, she suffered out of pocket expenses including Uber and Lyft rides, and the loss of a roof rack and a kayak holder (collectively valued at approximately $1,000).

260.   Plaintiff Catlos has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, her insurance deductible, and overpayment and diminished value of the Vehicle.

261.   Michael Scalise is a Wisconsin citizen residing in Mequon, Wisconsin.

262.   Plaintiff Scalise leased a new 2021 Kia Forte in April 2021 from Janesville Kia in Janesville, Wisconsin.

263.   In order to start Plaintiff Scalise's Vehicle, a traditional key must be inserted into the ignition.

264.   Defendants manufactured Plaintiff Scalise's Vehicle without an immobilizer.

265.   Because Plaintiff Scalise's Vehicle contains the Defect, Plaintiff Scalise is concerned that his Vehicle will be stolen.

266.   Further, because Plaintiff Scalise's Vehicle contains the Defect, the resale value of Plaintiff Scalise's Vehicle has been diminished because consumers now know that these Vehicles are easy to steal. Accordingly, consumers will not pay what they would otherwise be willing to pay if these Vehicles did not contain the Defect.

267.   Plaintiff Scalise has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect, including, but not limited to, the diminished resale value of his Vehicle, and the amount he overpaid for the Vehicle at purchase because the Defect was not disclosed.

**B.    Defendants**

268.   Defendant Kia America, Inc. is a California corporation with a principal place of business at 111 Peters Canyon Road, Irvine, California 92606.

269.   Defendant Hyundai Motor America is a California corporation with a principal place of business at 10550 Talbert Avenue, Fountain Valley, California 92708.

## IV.   FACTUAL ALLEGATIONS

270.   Immobilizers have been proven to deter auto theft. Indeed, a 2016 study reflects that the use of immobilizers lowered the overall rate of car thefts by 40% over a ten-year period.[1]

271.   Recognizing the value of immobilizers as an anti-theft device, countries across the globe require immobilizers to be installed as standard equipment in new vehicles. For example, the European Union has required immobilizers as a standard feature for all new vehicles since 1998, Australia since 2001, and Canada since 2007.[2]

272.   Kia and Hyundai, however, have largely refused to implement immobilizers as standard technology in virtually all of their vehicle lines. Defendants have long been aware of the anti-theft benefits attendant to making immobilizers a standard feature on their vehicles based on the immobilizer mandates of other countries in which Kia and Hyundai sell their vehicles. Kia and Hyundai sell virtually identical vehicles to the Class Vehicles in countries with immobilizer requirements, but have largely failed to equip Vehicles sold in the United States with the same immobilizer technology designed to prevent auto theft.

273.   Kia and Hyundai likely refused to implement this technology as a standard feature in the Class Vehicles as a cost-saving measure to improve their profitability.

274.   Given the ease with which Class Vehicles can be stolen, the United States has experienced a swell in reported car thefts of Vehicles.[3] For instance, in Milwaukee,

---

[1] Jan C. van Ours & Ben Vollaard, *The Engine Immobilizer: A Non-Starter For Car Thieves*, THE ECONOMIC JOURNAL, Vol. 126, No. 593, 1264, 1283 (June 2016).

[2] *Id.* at 1265.

[3] Plaintiffs' research indicates that "[n]ationally, almost 60,000 Hyundai and Kia vehicles have been stolen this year through Aug. 31." Michelle Basch, *Why Hyundai, Kia owners should be especially concerned about car thieves*, WTOP NEWS (Oct. 24,

Wisconsin, where Plaintiff McNerney's Vehicle was stolen, two of the three vehicle makes accounting for nearly 60% of vehicle thefts are Kia and Hyundai.[4]

275.   The cost to repair stolen Vehicles can be substantial. The cost to repair a window and steering column on a Class Vehicle alone can exceed $3,000.[5] Because cars taken on joy rides often experience further damage, the owner's total cost to repair their vehicle often exceed $10,000.[6]

276.   Moreover, due to the alarming rate in which Class Vehicles are being stolen, Defendants' authorized dealers and repair shops are experiencing shortages of the parts needed to repair them. Some parts are back-ordered up to eight weeks.[7]

277.   The federal government has long recognized that "stolen cars constitute a major hazard to life and limb on the highways." 33 Fed. Reg. 6,471, (Apr. 27, 1968). Moreover, "cars operated by unauthorized persons are far more likely to cause unreasonable risk of accident, personal injury, and death than those which are driven by authorized individuals." *Id.*

278.   The rate at which these Vehicles are being stolen is so high that certain auto insurance companies are either refusing to insure these Vehicles or have raised the

---

2022), https://wtop.com/crime/2022/10/why-hyundai-kia-owners-should-be-especially-concerned-about-car-thieves/ (last accessed Nov. 16, 2022).

[4] Tony Atkins, *Honda, Hyundai, Kias among Milwaukee's most stolen cars, police warn*, TMJ 4 (Dec. 2, 2020), https://www.tmj4.com/news/local-news/honda-hyundai-kias-among-milwaukees-most-stolen-cars-police-warn (last accessed Nov. 16, 2022); Winnie Dortch, *Most stolen cars in Milwaukee: Kia, Hyundai and Honda models*, WDJT MILWAUKEE (Dec. 2, 2020), https://www.cbs58.com/news/most-stolen-cars-in-milwaukee-kia-hyundai-and-honda-models (last accessed Nov. 16, 2022).

[5] James E. Causey, *Motor vehicle thefts in Milwaukee are up 152%. Auto repair businesses say the worst may be yet to come*, MILWAUKEE JOURNAL SENTINEL (Feb. 3, 2021), https://www.jsonline.com/story/news/solutions/2021/02/03/motorvehicle-thefts-up-152-milwaukee-so-far-2021/4266701001/ (last accessed Nov. 16, 2022).

[6] *Id.*

[7] *Id.*

rates. The following statement from Progressive was recently released to ABC 7 News Denver:

> We're committed to providing affordable insurance solutions for consumers based on the particular level of risk while also ensuring our policies are accurately priced. Due to the theft risk that some Hyundai and Kia vehicles present, in many cases it makes these vehicles difficult to insure, so we have adjusted our acceptance criteria for new business on some of these models. We'll continue to monitor how this issue plays out, and are hopeful to be able to revisit our decision if the theft risk diminishes and community awareness improves.[8]

279.   Other harms caused by the auto theft include increased insurance premiums foisted upon the victims of these crimes, other property that is stolen or damaged in the process, and the diminution in value of the Class Vehicles being targeted.

280.   Notably, the Vehicles fail to comply with Federal Motor Vehicle Safety Standard ("FMVSS") 114, which requires: "Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents: (a) The normal activation of the vehicle's engine or motor; and (b) Either steering, or forward self-mobility, of the vehicle, or both."

281.   If the Vehicles were manufactured to comply with this FMVSS, then they would not be stolen at such alarming rates because when the key is removed from the starting system, both steering and forward self-mobility would be prevented.

282.   Recognizing the gravity of the problem, Defendants have announced that all new model vehicles will be equipped with an immobilizer.[9] But this change offers

---

[8] Mercedes Streeter, *Progressive Reportedly Won't Insure Some Kias And Hyundais Because They're Too Easy To Steal*, THE AUTOPIAN (Aug. 17, 2022), https://www.theautopian.com/progressive-reportedly-wont-insure-some-kias-and-hyundais-because-theyre-too-easy-to-steal/ (last accessed Nov. 16, 2022).

[9] Jeramey Jannene, *Two-Thirds of All Milwaukee Auto Thefts Are Kia and Hyundai Vehicles*, RBAN MILWAUKEE (July 4, 2021), https://urbanmilwaukee.com/2021/07/24/two-thirds-of-all-milwaukee-auto-thefts-are-kia-and-hyundai-vehicles/ (last accessed Nov. 16, 2022).

little consolation to the thousands of consumers whose defective Vehicles remain vulnerable to theft.

283.   Defendants have long known the security benefits offered by immobilizers. Indeed, Defendants have been selling virtually identical vehicles equipped with immobilizers overseas for decades, and have even incorporated immobilizers as standard technology into select higher-end models, but Defendants have simply refused to follow their competitors by making it standard technology on their lower-cost brands.

284.   The ease with which the Class Vehicles may be stolen is not surprising to Defendants. Upon information and belief, Defendants have known of the unusually high rate of thefts experienced by Class Vehicles for many years, through scores of customer complaints relayed through their dealers.

285.   Moreover, Defendants must have known of how these Vehicles were being stolen because they sell replacement parts to dealerships and auto body shops around the country that are needed to repair the stolen Vehicles. Because the Vehicles are being stolen in the same way, Defendants would have experienced a spike in orders for the same replacement parts.

286.   But Defendants continued to sell the Class Vehicles, flooding the market with more unsafe cars susceptible to theft. Only when the problem became too large to ignore did Defendants decide to introduce immobilizer technology to all future new vehicles going forward.

287.   Meanwhile, the Class members who have previously purchased the Vehicles remain vulnerable.

## V.   CHOICE OF LAW ALLEGATIONS

288.   Because this Complaint is brought in California, California's choice of law regime governs the state law allegations in this Complaint. Under California's choice of law rules, California law applies to the claims of all Class members, regardless of their state of residence or state of purchase.

289.   Because Defendants are headquartered—and made all decisions relevant to these claims—in California, California has a substantial connection to, and materially greater interest in, the rights, interests, and policies involved in this action than any other state. Application of California law to Defendants and the claims of all Class members would not be arbitrary or unfair.

290.   Plaintiffs plead claims on behalf of a nationwide class because the laws for each state do not vary materially for these claims.   Alternatively, Plaintiffs plead state law classes claims as indicated below. This Complaint refers to the nationwide and state classes collectively as the "Class," unless noted otherwise.

## VI.   CLASS ACTION ALLEGATIONS

291.   Plaintiffs bring this action on behalf of themselves and all others similarly situated under Fed. R. Civ. P. 23.

292.   Subject to confirmation, clarification and/or modification based on discovery to be conducted in this action, the classes that Plaintiffs seek to represent shall be defined as follows:

All persons and entities nationwide that purchased or leased a Class Vehicle (the "Nationwide Class").

All persons and entities that purchased or leased a Class Vehicle in the State of Alabama (the "Alabama Class").

All persons and entities that purchased or leased a Class Vehicle in the State of Arkansas (the "Arkansas Class").

All persons and entities that purchased or leased a Class Vehicle in the State of California (the "California Class").

All persons and entities that purchased or leased a Class Vehicle in the State of Delaware (the "Delaware Class").

All persons and entities that purchased or leased a Class Vehicle in the State of Georgia (the "Georgia Class").

All persons and entities that purchased or leased a Class Vehicle in the State of Illinois (the "Illinois Class").

All persons and entities that purchased or leased a Class Vehicle in the State of Indiana (the "Indiana Class").

All persons and entities that purchased or leased a Class Vehicle in the State of Kentucky (the "Kentucky Class").

All persons and entities that purchased or leased a Class Vehicle in the State of Maryland (the "Maryland Class").

All persons and entities that purchased or leased a Class Vehicle in the State of Massachusetts (the "Massachusetts Class").

All persons and entities that purchased or leased a Class Vehicle in the State of Michigan (the "Michigan Class").

All persons and entities that purchased or leased a Class Vehicle in the State of Minnesota (the "Minnesota Class").

All persons and entities that purchased or leased a Class Vehicle in the State of North Carolina (the "North Carolina Class").

All persons and entities that purchased or leased a Class Vehicle in the State of Ohio (the "Ohio Class").

All persons and entities that purchased or leased a Class Vehicle in the State of Pennsylvania (the "Pennsylvania Class").

All persons and entities that purchased or leased a Class Vehicle in the State of Rhode Island (the "Rhode Island Class").

All persons and entities that purchased or leased a Class Vehicle in the State of Tennessee (the "Tennessee Class").

All persons and entities that purchased or leased a Class Vehicle in the State of Texas (the "Texas Class").

All persons and entities that purchased or leased a Class Vehicle in the State of Wisconsin (the "Wisconsin Class").

(Collectively, the "Class" unless otherwise noted.)

293.   Excluded from the Class are: (1) Defendants, any entity in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

294.   Plaintiffs seek only damages and injunctive relief on behalf of themselves and the Class members. Plaintiffs disclaim any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiffs and/or the Class members.

295.   While the exact number of Class members is unknown to Plaintiffs at this time and can only be determined by appropriate discovery, membership in the Class is ascertainable based upon the records maintained by Defendants and governmental officials. Upon information and belief, Defendants have sold and leased many thousands of Vehicles nationwide during the relevant time period. Therefore, the Class members are so numerous that individual joinder of all Class members is impracticable under Fed. R. Civ. P. 23(a)(1).

296.   Common questions of law and fact exist as to all Class members. These common legal and factual questions include:

(a)     Whether Defendants designed, advertised, sold, and placed the Class Vehicles into the stream of commerce;

(b)     Whether the Class Vehicles were sold with the Defect described above;

(c)     Whether the Defect in the Class Vehicles is a safety and/or security defect that created a foreseeable risk of harm to Plaintiffs and the Class;

(d)     Whether Defendants breached implied warranties made to the Class members;

(e)     Whether Defendants knew about the Defect and, if so, how long Defendants have known about the Defect;

(f)     Whether Defendants concealed the Defect;

(g)     Whether Defendants' conduct violates consumer protection statutes, warranty laws, and other laws asserted herein;

(h)     Whether the Class members have suffered damages as a result of the conduct alleged herein, and if so, the measure of such damages, including diminution of value and deprivation of the benefit of the bargain; and

(i)     Whether the Class members are entitled to injunctive relief.

297.   Plaintiffs' claims are typical of the claims of the Class members whom they seek to represent under Fed. R. Civ. P. 23(a)(3) because Plaintiffs and each Class member have a Vehicle with the same Defect.

298.   Plaintiffs will fairly and adequately represent and protect the interests of the Class members as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class members. Further, Plaintiffs have retained counsel competent and experienced in complex class action litigation, including automotive defect class action litigation, and Plaintiffs intend to prosecute this action vigorously. Therefore, the interests of the Class members will be fairly and adequately protected.

299.   A class action is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to any other available means for fairly and efficiently adjudicating the controversy. In this regard, the Class members' interests in individually controlling the prosecution of separate actions is low given the magnitude, burden, and expense of individual prosecutions against large corporations such as Defendants. It is desirable to concentrate this litigation in this forum to avoid burdening the courts with individual lawsuits. Individualized litigation presents a potential for inconsistent or contradictory results and also increases the delay and expense to all parties and the court system presented by the legal and factual issues

of this case. By contrast, the class action procedure here will have no management difficulties. Defendants' records and the records available publicly will easily identify the Class members. The Defect is common to all Vehicles; therefore, the same common documents and testimony will be used to prove Plaintiffs' claims as well as the claims of the Class members. Finally, proceeding as a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court

300.   A class action is appropriate under Fed. R. Civ. P. 23(b)(2) because, as stated above, Defendants have acted or refused to act on grounds that apply generally to the Class members, so that final injunctive relief or corresponding declaratory relief is appropriate as to all Class members.

## VII.   CLAIMS

**A.     Claims Brought on Behalf of the Nationwide Class**

**COUNT I**
**BREACH OF IMPLIED WARRANTY**
**(BASED ON CALIFORNIA LAW)**

301.   Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

302.   This count is brought under California law on behalf of a Nationwide Class.

303. As detailed herein, Defendants designed, manufactured, distributed, and sold the Class Vehicles knowing that consumers like Plaintiffs and the Class would purchase these products from Kia and Hyundai's authorized dealers as a means of transportation

304.   As merchants of the Class Vehicles, Kia and Hyundai warranted to the Plaintiffs and the Class that the Class Vehicles were fit for the ordinary purpose for which they are used.

305.   Plaintiffs relied on this warranty to their detriment.

306.   The Class Vehicles are not "merchantable" because they are not reasonably fit for the ordinary purpose for which they are sold, which is to provide safe, reliable

transportation. To the contrary, the Class Vehicles pose a substantial safety hazard because the Defect renders them vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

307. Sufficient privity of contract exists to assert this implied warranty claim.

308. Defendants market and advertise the sale of the Class Vehicles in various media outlets across the United States, including to the Plaintiffs and the Class.

309. Defendants advertise their authorized dealer network on their respective websites and task them with administering the promotional material and warranty information for new Class Vehicles to prospective consumers throughout the nation. Through Defendants' websites, consumers obtain information about vehicles; design specific vehicles to meet his or her needs; obtain information about the value of trade-in vehicles; request additional marketing materials; and request quotes for vehicles. Defendants then send these consumers to "authorized dealers" to consummate sales and leases.

310. Defendants control various details regarding their dealers' operations through various written agreements, such as: (i) granting each dealer a license to use their respective trademarks and intellectual property; (ii) furnishing each dealer with marketing materials to assist in the sale of their vehicles; (iii) providing training to dealership personnel to assist in their sales activities; and (iv) prohibiting their dealers from engaging in certain practices that otherwise detract from their respective brands or undermine the sale of their respective vehicles, including the Class Vehicles.

311. Plaintiffs purchased and/or leased their respective Vehicles from "authorized dealers" with the understanding that these dealers were acting on behalf of Defendants.

312. The sole and express purpose that each authorized Kia and Hyundai dealer has when it acquires the vehicles from Kia and Hyundai is to immediately re-sell them to the end-users like Plaintiffs and the Class members.

313. Defendants' conduct, and the conduct of their respective dealers, thus create a justifiable belief on the part of Plaintiffs and Class members that the dealers are agents of Kia and/or Hyundai, which the Plaintiffs relied on to their detriment.

314. Thus, each Kia and Hyundai dealership operates as the actual and/or apparent agent of the Defendants-manufacturers named herein, which satisfies any privity requirement.

315. Moreover, the purchase and/or lease agreements between the Plaintiffs and their respective dealers were entered directly and primarily for Kia and Hyundai's benefit.

316. Likewise, any contract whereby Defendants' authorized dealers acquire the Class Vehicles from Defendants to resell to the end-user is also for the express benefit of Plaintiffs and the Class. On information and belief, Defendants' authorized dealers make little money on the actual sale or lease of new vehicles, including the Class Vehicles.

317. Plaintiffs and the members of the Class therefore have standing to assert implied warranty claims against Defendants by virtue of their status as intended, third-party beneficiaries of these dealership sales agreements, which further satisfies the privity requirement.

318. Privity thus exists between Defendants on the one hand, and the Plaintiffs and the Class on the other by virtue of the express warranties provided through their purchase and/or lease agreements.

319. Moreover, the Magnuson-Moss Warranty Act ("MMWA") provides that when a manufacturer offers a written warranty, it may limit the duration of an implied warranty to the duration of an express warranty, but it cannot disclaim implied

warranties all together. *See* 15 U.S.C. § 2308(a) ("No supplier may disclaim or modify . . . any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer Product . . . ."). A manufacturer should not be permitted to avoid this prohibition by claiming an ostensible lack of privity when the manufacturer itself chose its distribution model.

320.   Imposing a rigid privity requirement in this case would permit Defendants to escape both the letter and spirit of the MMWA through their preferred distribution scheme, one in which the only parties in strict privity that can assert an implied warranty claim are Defendants' own dealers who would never need to assert the claim in the first instance.

321.   Consequently, any rigid application of a state law privity requirement would violate the Supremacy Clause and be preempted. See U.S. Const. art. VI ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.").

322.   As a direct and proximate result of Defendants' breach of these implied warranties, Plaintiffs and the Class have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial. These damages include, but are not limited to, overpayment for the Class Vehicles, insurance deductibles to get the stolen Class Vehicles repaired, the cost to replace other property stolen in connection with the thefts of Vehicles, the loss of use of the Vehicles, costs associated with the replacement of the totaled Class Vehicles, and/or the diminution in value of the stolen Class Vehicles that were totaled.

323.   The circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose, such that the Plaintiffs and the Class may

seek alternative remedies. Indeed, these warranties have denied the Plaintiffs and the Class the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever-present risk of them being stolen.

324.   Further, Kia and Hyundai's exclusion and/or limitation of consequential damages in their New Vehicle Limited Warranties is unconscionable and void for the reasons stated above.

325.   Accordingly, the Plaintiffs and the Class are entitled to damages flowing from Defendants' breach of their implied warranties, as well as all consequential and incidental damages resulting from this breach.

326.   Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein. Affording Defendants a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

## COUNT II
## VIOLATIONS OF MAGNUSON MOSS WARRANTY ACT, 15 U.S.C. §§ 2301

327.   Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

328.   Plaintiffs bring this claim on behalf of the Nationwide Class.

329.   Congress enacted the MMWA, 15 U.S.C. §§ 2301, *et seq.*, to address the widespread misuse of merchants' express warranties and to protect consumers from deceptive warranty practices. The MMWA imposes civil liability on any "warrantor" who fails to comply with any obligation under a written or corresponding implied warranty. *Id*. § 2310(d)(1).

330.   The Class Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1).

331.   Plaintiffs and members of the Class are "consumers" as defined in 15 U.S.C. § 2301(3).

332.   Kia and Hyundai are "suppliers" and "warrantors" as those terms are defined in 15 U.S.C. § 2301(4) & (5), respectively

333.   In connection with the sale and/or lease of the Class Vehicles, Defendants supplied Plaintiffs and the Class with "written warranties" as that term is defined in 15 U.S.C. § 2301(6).

334.   15 U.S.C. § 2310(d)(1) provides that "a consumer who is damaged by the failure of the supplier, warrantor, or service contractor to comply with any obligation under [the MMWA], or a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief in any court of competent jurisdiction in any state."

335.   15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

336.   Defendants provided Plaintiffs and Class members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, Defendants warranted that the Vehicles were fit for their ordinary purpose and would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

337.   Defendants breached their implied warranties, as described herein, and are therefore liable to Plaintiffs under 15 U.S.C. § 2310(d)(1). The Defect rendered the Vehicles unmerchantable and unfit for their ordinary use of driving when they were sold or leased, and at all times thereafter.

338.   Plaintiffs used their respective Class Vehicles in a manner consistent with their intended use and performed every duty required of them under the terms of the

warranty, except as may have been excused or prevented by Defendants' conduct or by operation of law.

339.   Plaintiffs and the Class seek to recover damages resulting directly from Defendants' breach of their implied warranties and their deceitful and unlawful conduct described herein. These damages include, but are not limited to, overpayment for the Class Vehicles, insurance deductibles to get the stolen Class Vehicles repaired, the cost to replace other property stolen in connection with the thefts of their Vehicles, the loss of use of their respective Vehicles, costs associated with the replacement of the totaled Class Vehicles, and/or the diminution in value of a stolen Class Vehicles that were not totaled.

340.   The MMWA also permits "other legal and equitable" relief. 15 U.S.C. § 2310(d)(1). Plaintiffs seek reformation of Defendants' respective written warranties to comport with their obligations under the MMWA and with consumers' reasonable expectations. Plaintiffs also seek to enjoin Defendants from acting unlawfully as alleged herein.

341.   Finally, Plaintiffs intend to seek such an award as prevailing consumers at the conclusion of this case. The MMWA provides for an award of costs and expenses, including attorneys' fees, to prevailing consumers in the Court's discretion. 15 U.S.C. § 2310(d)(2).

**COUNT III**
**UNJUST ENRICHMENT**

342.   Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein. This claim is brought under California law on behalf of the Nationwide class.

343.   This claim is pleaded in the alternative to any contract-based claims asserted by the Plaintiffs noted above. *See* Fed. R. Civ. P. 8(d)(2). Moreover, a claim for unjust enrichment is properly brought where, as here, Defendants contend that their warranties do not cover damages stemming from the Defect.

344.  Plaintiffs bought and/or leased their Vehicles new, directly from a Kia or Hyundai dealership.

345.  Every year, Defendants make millions of dollars in revenue selling and leasing new Vehicles through their respective dealer networks across the United States.

346.  Plaintiffs allege upon information and belief that consumers are permitted to buy Vehicles directly from Defendants, but that the proceeds flow through various dealers and/or related companies (e.g., their finance companies) back to Defendants.

347.  Accordingly, the purchase and lease of new Vehicles confers a direct monetary benefit on Defendants.

348.  Used Vehicle purchasers also conferred a benefit on Defendants. Defendants profit off the replacement parts needed to service and repair these Vehicles.

349.  Further, as more used Vehicles stay in the stream of commerce, Defendants' brand awareness rises, which is of substantial value to vehicle manufacturers. Defendants have touted their vehicles as not only reliable and durable, but also as having lower depreciation rates and ownership costs over their useful lives.[10]

350.  Defendants tout these benefits to promote the sale and lease of their new cars for pecuniary benefit.

351.  Accordingly, Plaintiffs and the Class conferred a benefit upon Defendants, whether directly, indirectly, or through one or more affiliate entities.

352.  Defendants knew and appreciated the benefits conferred upon them through the sale of the Class Vehicles to Plaintiffs and members of the Class. Many of the Vehicles were financed through Kia Motor Finance or Hyundai Motor Finance

353.  Notably, federal law mandates that Kia and Hyundai maintain records of first-time purchasers of Class Vehicles, *see* 49 U.S.C. § 30117(b), and remain able to

---

[10] Kia, Press Release, *Kia Sweeps Intellichoice CPO Awards*, Kia (Dec. 19, 2019), https://www.kiamedia.com/us/en/media/pressreleases/15857/kia-sweeps-intellichoice-cpo-awards.

identify the owners of their used cars, including the owners of certain Class Vehicles, to comply with recall notification procedures under applicable law. *See id.* § 30119(d)(1)(A).

354.   Defendants have long represented to the consuming public that the Class Vehicles are safe, reliable, and durable even though they knew of the Defect. Not only did Defendants fail to equip the Class Vehicles with an industry standard anti-theft device, they failed to comply with FMVSS 114.

355.   As a result of Defendants' wrongful conduct, unsuspecting consumers like Plaintiffs and the Class overpaid for the Vehicles and incurred additional costs, thereby earning more profit.

356.   Defendants continued to market the Class Vehicles despite knowing that they were unsafe and susceptible to theft, foisting the cost they would otherwise have been forced to bear through a voluntary recall or otherwise on Plaintiffs and the Class

357.   Under these circumstances, it would be unjust to allow Defendants to accept and retain the benefits identified herein without paying Plaintiffs and the Class them for their value.

**COUNT IV**
**VIOLATIONS OF THE CALIFORNIA CONSUMER**
**LEGAL REMEDIES ACT**
**(CAL. CIV. CODE § 1750, *ET SEQ.*)**

358.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

359.   Plaintiffs bring this claim as part of the Nationwide Class.

360.   California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

361.   The Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

362.   Plaintiffs and the other Class members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiffs, the other Class members, and Defendants are "persons" as defined in Cal. Civ. Code § 1761(c).

363.   As alleged herein, Defendants made misleading representations and omissions concerning the benefits, performance, and safety of the Vehicles.

364.   In purchasing or leasing the Vehicles, Plaintiffs and other Class members were deceived by Defendants failure to disclose its knowledge of the Defect.

365.   Defendants' conduct as described herein was and is in violation of the CLRA. Defendants' conduct violates at least the following enumerated CLRA provisions:

    i.    Cal. Civ. Code § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities that they do not have.

    ii.    Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade if they are of another.

    iii.    Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised.

    iv.    Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

366.   Defendants intentionally and knowingly misrepresented and omitted material facts regarding the Vehicles with an intent to mislead Plaintiffs and Class members.

367.   In purchasing or leasing the Vehicles, Plaintiffs and other Class members were deceived by Defendants' failure to disclose their knowledge of the Defect.

368.   Plaintiffs and other Class members had no way of knowing Defendants' representations were false, misleading, and incomplete or knowing the true nature of the Defect.

369.   As alleged herein, Defendants engaged in a pattern of deception and public silence in the face of a known Defect. Plaintiffs and other Class members did not, and could not, unravel Defendants' deception on their own.

370.   Defendants knew or should have known their conduct violated the CLRA.

371.   Defendants owed Plaintiffs and the Class members a duty to disclose the truth about the Defect because the defect created a safety hazard and Defendants:

     i.     Possessed exclusive knowledge of the Defect,

     ii.     Intentionally concealed the foregoing from Plaintiffs and Class members; and/or

     iii.     Made incomplete representations in advertisements and on its website, failing to warn the public of the Defect.

372.   Defendants had a duty to disclose that the Vehicles were fundamentally flawed as described herein, because the Defect created a safety hazard, and Plaintiffs and the other Class members relied on Defendants' material misrepresentations and omissions regarding the features of the Vehicles.

373.   Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members that purchased the Vehicles and suffered harm as alleged herein.

374.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendants' conduct in that Plaintiffs and the other Class members incurred costs, including overpaying for their Vehicles that have suffered a diminution in value.

375.   Defendants' violations cause continuing injuries to Plaintiffs and other Class members.

376.   Defendants' unlawful acts and practices complained of herein affect the public interest.

377.   Defendants knew of the Defect, and that the Vehicles were materially compromised by it.

378.   The facts concealed and omitted by Defendants from Plaintiffs and other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase a Vehicle or pay a lower price. Had Plaintiffs and the other Class members known about the defective nature of the Vehicles, they would not have purchased the Vehicles or would not have paid the prices they paid.

379.   Plaintiffs' and the other Class members' injuries were proximately caused by Defendants' unlawful and deceptive business practices.

380.   Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs seek an order enjoining Defendants from engaging in the methods, acts, or practices alleged herein, including further concealment of the Defect.

381.   Plaintiffs sent out a notice letter on November 14, 2022.

382.   Pursuant to Cal. Civ. Code § 1782, if Defendant does not rectify its conduct within 30 days, Plaintiffs intend to amend this Complaint to add claims under the Cal. Civ. Code for:

      i.      Actual damages;

      ii.      Restitution of money to Plaintiffs and Class members, and the general public;

      iii.      Punitive damages;

      iv.      An additional award of up to $5,000 to each Plaintiffs and any Class member who is a "senior citizen";

      v.      Attorneys' fees and costs; and

      vi.      Other relief that this Court deems proper.

1

2

**COUNT V**
**VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)**

3       383.   Plaintiffs incorporate by reference all preceding allegations as though fully

4    set forth herein.

5       384.   Plaintiffs bring this claim on behalf of the Nationwide Class.

6       385.   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code

7    § 17200, *et seq*., proscribes acts of unfair competition, including "any unlawful, unfair

8    or fraudulent business act or practice and unfair, deceptive, untrue, or misleading

9    advertising."

10      386.   Defendants' conduct, as described herein, was and is in violation of the

11   UCL. Defendants' conduct violates the UCL in at least the following ways:

12             i.     By failing to disclose the Defect;

13             ii.    By selling and leasing Vehicles that suffer from the Defect;

14             iii.   By knowingly and intentionally concealing from Plaintiffs and the

15                    other Class members the Defect;

16             iv.    By marketing Vehicles as safe, convenient, and defect free, with

17                    cutting edge technology, all while knowing of the Defect; and

18             v.     By violating other California laws, including California consumer

19                    protection laws.

20      387.   Defendants intentionally and knowingly misrepresented and omitted

21   material facts regarding the Vehicles with intent to mislead Plaintiffs and the other Class

22   members.

23      388.   In purchasing or leasing the Vehicles, Plaintiffs and the other Class

24   members were deceived by Defendants' failure to disclose the Defect.

25      389.   Plaintiffs and the other Class members reasonably relied upon Defendants'

26   false misrepresentations and omissions. They had no way of knowing that Defendants'

27   representations were false, misleading, and incomplete. As alleged herein, Defendants

28

1  engaged in a pattern of deception and public silence in the face of a known defect.

2  Plaintiffs and the other Class members did not, and could not, unravel Defendants'

3  deception on their own.

4      390.   Defendants knew or should have known that its conduct violated the UCL.

5      391.   Defendants owed Plaintiffs and the other Class members a duty to disclose

6  the truth about the Defect because the Defect created a safety hazard and Defendants:

7            i.   Possessed exclusive knowledge of the Defect;

8            ii.   Intentionally concealed the foregoing from Plaintiffs and the

9                 other Class members; and/or

10           iii.  Made incomplete representations by failing to warn the public

11                or to publicly admit the Defect.

12     392.   Defendants had a duty to disclose the Defect, because Plaintiffs and the

13  other Class members relied on Defendants' material misrepresentations and omissions.

14     393   Defendants' conduct proximately caused injuries to Plaintiffs and the other

15  Class members that purchased the Vehicles and suffered harm as alleged herein.

16     394.   Plaintiffs and the other Class members were injured and suffered

17  ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of

18  Defendants' conduct in that Plaintiffs and the other Class members incurred costs,

19  including overpaying for their Vehicles that have suffered a diminution in value.

20     395.   Defendants' violations cause continuing injuries to Plaintiffs and Class

21  members.

22     396.   Defendants' unlawful acts and practices complained of herein affect the

23  public interest.

24     397.   Defendants' misrepresentations and omissions alleged herein caused

25  Plaintiffs and the other Class members to make their purchases of their Vehicles. Absent

26  those misrepresentations and omissions, Plaintiffs and the other Class members would

27  not have purchased these Vehicles, would not have purchased these Vehicles at the

28

1  prices they paid, and/or would have purchased less expensive alternative vehicles that

2  did not contain the Defect and did not fail to live up to industry standards.

3      398.   Accordingly, Plaintiffs and the other Class members have suffered injury-

4  in-fact, including lost money or property, as a result of Defendants' misrepresentations

5  and omissions.

6      399.   Plaintiffs request that this Court enter such orders or judgments as may be

7  necessary to restore to Plaintiffs and Class members any money Defendants acquired

8  by unfair competition, including restitution and/or restitutionary disgorgement, as

9  provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such

10  other relief as may be appropriate.

11  **COUNT VI**<br>**FRAUD BY CONCEALMENT**

12  **(BASED ON CALIFORNIA LAW)**

13      400.   Plaintiffs incorporate by reference all preceding allegations as though fully

14  set forth herein.

15      401.   Plaintiffs bring this claim on behalf of the Nationwide Class.

16      402.   Defendants intentionally concealed the Defect.

17      403.   Defendants further affirmatively misrepresented to Plaintiffs in advertising

18  and other forms of communication, including standard and uniform material provided

19  with each car and on its website, that the Vehicles they were selling had no significant

20  defects, that the Vehicles were reliable, and would perform and operate properly.

21      404.   Defendants knew about the Defect when these representations were made.

22      405.   The Vehicles purchased by Plaintiffs and the other Class members

23  contained the Defect.

24      406.   Defendants had a duty to disclose Defect as alleged herein, because the

25  Defect created a safety hazard and Plaintiffs and the other Class members relied on

26  Defendants' material representations.

27

28

407.   As alleged herein, at all relevant times, Defendants have held out the Vehicles to be free from defects. Defendants touted and continue to tout the many benefits and advantages of the Vehicles, but nonetheless failed to disclose important facts related to the Defect. This made Defendants' other disclosures about the Vehicles deceptive.

408.   The truth about the Defect was known only to Defendants; Plaintiffs and the other Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

409.   Plaintiffs and the other Class members reasonably relied upon Defendants' deception. They had no way of knowing that Defendants' representations were false, misleading, or incomplete. As consumers, Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own. Rather, Defendants intended to deceive Plaintiffs and Class members by concealing the true facts about the Vehicles.

410.   Defendants' false representations and omissions were material to consumers because they concerned qualities of the Vehicles that played a significant role in the value of the Vehicles.

411.   Defendants had a duty to disclose the Defect and violations with respect to the Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.

412.   Defendants also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with their Vehicles, without telling consumers that the Vehicles had a fundamental Defect that would affect the safety, quality, and performance of the Vehicle.

413.   Defendants' disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the Defect as

set forth herein. These omitted and concealed facts were material because they directly impact the value of the Vehicles purchased by Plaintiffs and Class members.

414. Defendants have still not made full and adequate disclosures and continues to defraud Plaintiffs and Class members by concealing material information regarding the Defect.

415. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for cars with faulty technology, and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified. Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

416. Because of the concealment and/or suppression of facts, Plaintiffs and Class members sustained damage because they own or lease Vehicles that are diminished in value as a result of Defendants' concealment of the true quality of the Vehicles' security systems. Had Plaintiffs and Class members been aware of the Defect in the Vehicles, and the Defendants' disregard for the truth, Plaintiffs and Class members would have paid less for their Vehicles or would not have purchased or leased them at all.

417. The value of Plaintiffs' and Class members' Vehicles have diminished as a result of Defendants' fraudulent concealment of the Defect, which has made any reasonable consumer reluctant to purchase any of the Vehicles, let alone pay what otherwise would have been fair market value for the Vehicles.

418. Accordingly, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

419. Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class

members' rights and the representations that Defendants made to them, in order to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT VII**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(CAL. COM. CODE § 2314)**

420.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

421.   Plaintiffs bring this claim on behalf of the Nationwide Class.

422.   Defendants are and were at all relevant times merchants with respect to motor vehicles under Cal. Com. Code § 2104.

423.   A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Cal. Com. Code § 2314.

424.   Defendants marketed the Vehicles as safe and reliable vehicles. Such representations formed the basis of the bargain in Plaintiffs' and Class members' decisions to purchase or lease the Vehicles.

425.   Plaintiffs and other Class members purchased or leased the Vehicles from Defendants, through Defendants' authorized agents for retail sales, through private sellers, or were otherwise expected to be the eventual purchasers of the Vehicles when bought from a third party. At all relevant times, Defendants were the manufacturers, distributors, warrantors, and/or sellers of the Vehicles.

426.   Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.

427.   Because of the Defect, the Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

428.   Defendants knew about the Defect, allowing Defendants to cure their breach of its warranty if they chose.

429.   Defendants' attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and other Class members. Among other things, Plaintiffs and other Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and other Class members, and Defendants knew of the defect at the time of sale.

430.   Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein. Affording Defendants a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

431.   Accordingly, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

**B.    Claims Brought on Behalf of Alabama Class**

**COUNT VIII**
**VIOLATION OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT**
**(ALA. CODE § 8-19-1 ET SEQ.)**

432.   Plaintiff Lucas ("Plaintiff" for purposes of all Alabama Class counts) hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

433.   Plaintiff brings this Count on behalf of the Alabama Class.

434.   The Alabama Deceptive Trade Practices Act declares several specific actions to be unlawful, including: "(11) Making a false or misleading statement of fact concerning the reasons for, existence of, or amounts of, price reductions"; and "(27) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5.

435.   Plaintiff and Alabama Class members are "consumers" within the meaning of Ala. Code § 8-19-3(2).

436.   Plaintiff, Alabama Class members, and Defendant Kia are "persons" within the meaning of Ala. Code § 8-19-3(3).

437.   Defendant Kia was and is engaged in "trade or commerce" within the meaning of Ala. Code § 8-19-3(8).

438.   Defendant Kia's conduct, as set forth above, occurred in the conduct of trade or commerce. In the course of its business, Defendant Kia concealed and suppressed material facts concerning the Vehicles. These acts were unconscionable, false, misleading, and/or deceptive within the meaning of Ala. Code § 8-19-5.

439.   Plaintiff and the Alabama Class were injured as a result of Defendant Kia's conduct. Plaintiff and the Alabama Class overpaid for their Vehicles and did not receive the benefit of their bargain, and have suffered damages as a result.

440.   Defendant Kia's conduct proximately caused the injuries to Plaintiff and the Alabama Class.

441.   Pursuant to Alabama Code § 8-19-10, Plaintiff seeks monetary relief against Defendant Kia measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $100 for each Plaintiff.

442.   Plaintiff also seeks an order enjoining Defendant Kia's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under Ala. Code § 8-19-1, *et seq.*

## COUNT IX
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (ALA. CODE § 7-2-314)

443.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

444.   Plaintiff brings this Count on behalf of the Alabama Class.

445.   Defendant Kia is and was at all relevant times a merchant with respect to motor vehicles.

446.   A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions, pursuant to Ala. Code § 7-2-314.

447.   These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that their security Defect renders them unsafe, inconvenient, and imperfect such that Plaintiff and Alabama Class members would not have purchased the Vehicles had they known of the Defect.

448.   Defendant Kia knew about the security Defect at the time of purchase, allowing it an opportunity to cure its breach of warranty if it chose.

449.   Defendant Kia was provided notice of the Defect by, among other things, numerous complaints about it, including the instant Complaint, and by customer complaints, letters, emails, and other communications from Class members and from dealers and other repair facilities.

450.   As a direct and proximate result of Defendant Kia's breach of the implied warranty of merchantability, Plaintiff and the other Alabama Class members have been damaged in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution, and/or diminution of value.

**C.**     **Claims Brought on Behalf of the Arkansas Class**

**COUNT X**
**VIOLATIONS OF THE DECEPTIVE TRADE PRACTICE ACT**
**(ARK. CODE ANN. § 4-88-101, *ET SEQ.*)**

451.     Plaintiff Bennett ("Plaintiff" for purposes of all Arkansas Class Counts) incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

452.     Plaintiff brings this claim on behalf of the Arkansas Class.

453.     The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") prohibits "[d]eceptive and unconscionable trade practices," which include, but are not limited to, a list of enumerated items, including "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade[.]" Ark. Code Ann. § 4-88-107(a)(10). The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission." Ark. Code Ann. § 4-88-108.

454.     Defendant Kia and Plaintiff are "persons" within the meaning of the Arkansas DTPA, Ark. Code Ann. § 4-88-102(5).

455.     The Class Vehicles are "goods" within the meaning of Ark. Code Ann. § 4-88-102(4).

456.     Defendant Kia violated the Arkansas DTPA by concealing and failing to disclose the Defect. Defendant Kia had an ongoing duty to Plaintiff and the Arkansas Class to refrain from unfair and deceptive practices under the Arkansas DTPA in the course of its business.

457.     Plaintiff and the Arkansas Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant Kia's concealment, misrepresentations, and/or failure to disclose material information.

458.   Plaintiff seeks monetary relief against Defendant Kia in an amount to be determined at trial. Plaintiff also seeks punitive damages because Defendant Kia acted wantonly in causing the injury or with such a conscious indifference to the consequences that malice may be inferred..

459.   Plaintiff also seeks an order enjoining Defendant Kia's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

## COUNT XI
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (ARK. CODE ANN. § 4-2-314)

460.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

461.   Plaintiff brings this claim on behalf of the Arkansas Class.

462.   Defendant Kia was at all relevant times a merchant with respect to motor vehicles within the meaning of Ark. Code Ann. § 4-2-104(1).

463.   A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to under Ark. Code Ann. § 4-2-314.

464.   These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that the defects in that the Defect rendered them unsafe, inconvenient, and imperfect such that Plaintiff and the other Arkansas Class members would not have purchased the Vehicles had they known of the Defect.

465.   Defendant Kia knew about the Defect at the time of purchase, allowing it to cure their breach of warranty if it chose.

466.   Defendant Kia was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails,

and other communications from Class members and from dealers and other repair facilities.

467.   As a direct and proximate result of Defendant Kia's breach of the implied warranty of merchantability, Plaintiff and the other Arkansas Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution, and/or diminution of value.

**D.      Claims Brought on Behalf of California Class**

**COUNT XII**
**VIOLATIONS OF THE CALIFORNIA CONSUMER**
**LEGAL REMEDIES ACT**
**(CAL. CIV. CODE § 1750, *ET SEQ.*)**

468.   Plaintiffs Winston, Poblete Taylor, Strong, and Helsel ("Plaintiffs" for purposes of all California Class counts) incorporate by reference all preceding allegations as though fully set forth herein.

469.   Plaintiffs bring this claim as part of the California Class.

470.   California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

471.   The Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

472.   Plaintiffs and the other Class members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiffs, the other Class members, and Defendants are "persons" as defined in Cal. Civ. Code § 1761(c).

473.   As alleged herein, Defendants made misleading representations and omissions concerning the benefits, performance, and safety of the Vehicles.

474.   In purchasing or leasing the Vehicles, Plaintiffs and other Class members were deceived by Defendants' failure to disclose their knowledge of the Defect.

475.   Defendants' conduct as described herein was and is in violation of the CLRA. Defendants' conduct violates at least the following enumerated CLRA provisions:

    i.    Cal. Civ. Code § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities that they do not have.

    ii.    Cal Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade if they are of another.

    iii.    Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised.

    iv.    Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

476.   Defendants intentionally and knowingly misrepresented and omitted material facts regarding the Vehicles with an intent to mislead Plaintiffs and Class members.

477.   In purchasing or leasing the Vehicles, Plaintiffs and other Class members were deceived by Defendants' failure to disclose their knowledge of the Defect.

478.   Plaintiffs and other Class members had no way of knowing Defendants' representations were false, misleading, and incomplete or knowing the true nature of the Defect.

479.   As alleged herein, Defendants engaged in a pattern of deception and public silence in the face of a known Defect. Plaintiffs and other Class members did not, and could not, unravel Defendants' deception on their own.

480.   Defendants knew or should have known their conduct violated the CLRA.

481.   Defendants owed Plaintiffs and the Class members a duty to disclose the truth about the Defect because the defect created a safety hazard and Defendants:

i.    Possessed exclusive knowledge of the Defect,

ii.   Intentionally concealed the foregoing from Plaintiffs and Class members; and/or

iii.  Made incomplete representations in advertisements and on its website, failing to warn the public of the Defect.

482.   Defendants had a duty to disclose that the Vehicles were fundamentally flawed as described herein, because the Defect created a safety hazard, and Plaintiffs and the other Class members relied on Defendants' material misrepresentations and omissions regarding the features of the Vehicles.

483.   Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members that purchased the Vehicles and suffered harm as alleged herein.

484.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendants' conduct in that Plaintiffs and the other Class members incurred costs, including overpaying for their Vehicles that have suffered a diminution in value.

485.   Defendants' violations cause continuing injuries to Plaintiffs and other Class members.

486.   Defendants' unlawful acts and practices complained of herein affect the public interest.

487.   Defendants knew of the Defect, and that the Vehicles were materially compromised by it.

488.   The facts concealed and omitted by Defendants from Plaintiffs and other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase a Vehicle or pay a lower price. Had Plaintiffs and the other Class members known about the defective nature of the Vehicles, they would not have purchased the Vehicles or would not have paid the prices they paid.

489.   Plaintiffs' and the other Class members' injuries were proximately caused by Defendants' unlawful and deceptive business practices.

490.   Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs seek an order enjoining Defendants from engaging in the methods, acts, or practices alleged herein, including further concealment of the Defect.

491.   Plaintiffs sent out a notice letter on November 14, 2022.

492.   Pursuant to Cal. Civ. Code § 1782, if Defendants do not rectify their conduct within 30 days, Plaintiffs intend to amend this Complaint to add claims under the Cal. Civ. Code for:

      i.     Actual damages;

      ii.    Restitution of money to Plaintiffs and Class members, and the general public;

     iii.   Punitive damages;

     iv.   An additional award of up to $5,000 to each Plaintiffs and any Class member who is a "senior citizen";

      v.    Attorneys' fees and costs; and

     vi.   Other relief that this Court deems proper.

**COUNT XIII**
**VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)**

493.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

494.   Plaintiffs bring this claim on behalf of the California Class.

495.   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising."

496.   Defendants' conduct, as described herein, was and is in violation of the UCL. Defendants conduct violates the UCL in at least the following ways:

      i.    By failing to disclose that the Defect;

      ii.   By selling and leasing Vehicles that suffer from the Defect;

     iii.  By knowingly and intentionally concealing from Plaintiffs and the other Class members the Defect;

     iv.  By marketing Vehicles as safe, convenient, and defect free, with cutting edge technology, all while knowing of the Defect; and

      v.   By violating other California laws, including California consumer protection laws.

497.   Defendants intentionally and knowingly misrepresented and omitted material facts regarding the Vehicles with intent to mislead Plaintiffs and the other Class members.

498.   In purchasing or leasing the Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose the Defect.

499.   Plaintiffs and the other Class members reasonably relied upon Defendants' false misrepresentations and omissions. They had no way of knowing that Defendants' representations were false, misleading, and incomplete. As alleged herein, Defendants engaged in a pattern of deception and public silence in the face of a known defect. Plaintiffs and the other Class members did not, and could not, unravel Defendants' deception on their own.

500.   Defendants knew or should have known that its conduct violated the UCL.

501.   Defendants owed Plaintiffs and the other Class members a duty to disclose the truth about the Defect because the Defect created a safety hazard and Defendants:

      i.    Possessed exclusive knowledge of the Defect;

      ii.   Intentionally concealed the foregoing from Plaintiffs and the other Class members; and/or

iii.   Made incomplete representations by failing to warn the public or to publicly admit the Defect.

502.   Defendants had a duty to disclose the Defect, because Plaintiffs and the other Class members relied on Defendants' material misrepresentations and omissions.

503.   Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members that purchased the Vehicles and suffered harm as alleged herein.

504.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendants' conduct in that Plaintiffs and the other Class members incurred costs, including overpaying for their Vehicles that have suffered a diminution in value.

505.   Defendants' violations cause continuing injuries to Plaintiffs and Class members.

506.   Defendants' unlawful acts and practices complained of herein affect the public interest.

507.   Defendants' misrepresentations and omissions alleged herein caused Plaintiffs and the other Class members to make their purchases of their Vehicles. Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased these Vehicles, would not have purchased these Vehicles at the prices they paid, and/or would have purchased less expensive alternative vehicles that did not contain the Defect and did not fail to live up to industry standards.

508.   Accordingly, Plaintiffs and the other Class members have suffered injury-in-fact, including lost money or property, as a result of Defendants' misrepresentations and omissions.

509.   Plaintiffs request that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs and Class members any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, as

1    provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such

2    other relief as may be appropriate.

3    **COUNT XIV**<br>**FRAUD BY CONCEALMENT**

4    **(BASED ON CALIFORNIA LAW)**

5        510.   Plaintiffs incorporate by reference all preceding allegations as though fully

6    set forth herein.

7        511.   Plaintiffs bring this claim on behalf of the California Class.

8        512.   Defendants intentionally concealed the Defect.

9        513.   Defendants further affirmatively misrepresented to Plaintiffs in advertising

10    and other forms of communication, including standard and uniform material provided

11    with each car and on its website, that the Vehicles they were selling had no significant

12    defects, that the Vehicles were reliable, and would perform and operate properly.

13        514.   Defendants knew about the Defect when these representations were made.

14        515.   The Vehicles purchased by Plaintiffs and the other Class members

15    contained the Defect.

16        516.   Defendants had a duty to disclose Defect as alleged herein, because the

17    Defect created a safety hazard and Plaintiffs and the other Class members relied on

18    Defendants' material representations.

19        517.   As alleged herein, at all relevant times, Defendants have held out the

20    Vehicles to be free from defects. Defendants touted and continue to tout the many

21    benefits and advantages of the Vehicles, but nonetheless failed to disclose important

22    facts related to the Defect. This made Defendants' other disclosures about the Vehicles

23    deceptive.

24        518.   The truth about the Defect was known only to Defendants; Plaintiffs and

25    the other Class members did not know of these facts and Defendants actively concealed

26    these facts from Plaintiffs and Class members.

27

28

519.   Plaintiffs and the other Class members reasonably relied upon Defendants' deception. They had no way of knowing that Defendants' representations were false, misleading, or incomplete. As consumers, Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own. Rather, Defendants intended to deceive Plaintiffs and Class members by concealing the true facts about the Vehicles.

520.   Defendants' false representations and omissions were material to consumers because they concerned qualities of the Vehicles that played a significant role in the value of the Vehicles.

521.   Defendants had a duty to disclose the Defect and violations with respect to the Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.

522.   Defendants also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with their Vehicles, without telling consumers that the Vehicles had a fundamental Defect that would affect the safety, quality, and performance of the Vehicle.

523.   Defendants' disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the Defect as set forth herein. These omitted and concealed facts were material because they directly impact the value of the Vehicles purchased by Plaintiffs and Class members.

524.   Defendants have still not made full and adequate disclosures and continues to defraud Plaintiffs and Class members by concealing material information regarding the Defect.

525.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as

much for cars with faulty technology, and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified. Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

526.   Because of the concealment and/or suppression of facts, Plaintiffs and Class members sustained damage because they own or lease Vehicles that are diminished in value as a result of Defendants' concealment of the true quality of the Vehicles' security systems. Had Plaintiffs and Class members been aware of the Defect in the Vehicles, and the Defendants' disregard for the truth, Plaintiffs and Class members would have paid less for their Vehicles or would not have purchased or leased them at all.

527.   The value of Plaintiffs' and Class members' Vehicles have diminished as a result of Defendants' fraudulent concealment of the Defect, which has made any reasonable consumer reluctant to purchase any of the Vehicles, let alone pay what otherwise would have been fair market value for the Vehicles.

528.   Accordingly, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

529.   Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Defendants made to them, in order to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT XV**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(CAL. COM. CODE § 2314)**

530.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

531.   Plaintiffs bring this claim on behalf of the California Class.

532.   Defendants are and were at all relevant times merchants with respect to motor vehicles under Cal. Com. Code § 2104.

533.   A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Cal. Com. Code § 2314.

534.   Defendants marketed the Vehicles as safe and reliable vehicles. Such representations formed the basis of the bargain in Plaintiffs' and Class members' decisions to purchase or lease the Vehicles.

535.   Plaintiffs and other Class members purchased or leased the Vehicles from Defendants, through Defendants' authorized agents for retail sales, through private sellers, or were otherwise expected to be the eventual purchasers of the Vehicles when bought from a third party. At all relevant times, Defendants were the manufacturers, distributors, warrantors, and/or sellers of the Vehicles.

536.   Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.

537.   Because of the Defect, the Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

538.   Defendants knew about the Defect, allowing Defendants to cure their breach of their warranty if they chose.

539.   Defendants' attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and other Class members. Among other things, Plaintiffs and other Class members had no meaningful choice in determining these time

limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and other Class members, and Defendants knew of the defect at the time of sale.

540.   Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein. Affording Defendants a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

541.   Accordingly, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

**E.    Claims Brought on Behalf of Delaware Class**

**COUNT XVI**
**VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT**
**(6 DEL. CODE § 2513, *ET SEQ.*)**

542.   Plaintiff McKnight ("Plaintiff" for purposes of all Delaware Class Counts) incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

543.   Plaintiff brings this claim on behalf of the Delaware Class.

544.   The Delaware Consumer Fraud Act ("Delaware CFA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby." 6 Del. Code § 2513(a).

545.   Defendant Kia is a "person" within the meaning of 6 Del. Code § 2511(7).

546.   Defendant Kia violated the Delaware CFA by concealing and failing to disclose the Defect. Defendant had an ongoing duty to Plaintiffs and the Delaware Class

1    to refrain from unfair and deceptive practices under the Delaware CFA in the course of

2    its business.

3         547.   Plaintiffs and the Delaware Class suffered ascertainable loss and actual

4    damages as a direct and proximate result of Defendant Kia's concealment,

5    misrepresentations, and/or failure to disclose material information.

6         548.   Plaintiffs seek damages under the Delaware CFA for injury resulting from

7    the direct and natural consequences of Defendant Kia's unlawful conduct. *See, e.g.*,

8    *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1077 (Del. 1983). Plaintiffs also seek

9    an order enjoining Defendant Kia's unfair, unlawful, and/or deceptive practices,

10   declaratory relief, attorneys' fees, and any other just and proper relief available under

11   the Delaware CFA.

12        549.   Defendant Kia engaged in gross, oppressive, or aggravated conduct

13   justifying the imposition of punitive damages.

14                            **COUNT XVII**
      **BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
15                      **(6 DEL. CODE § 2-314)**

16        550.   Plaintiff incorporates by reference all preceding allegations as though fully

17   set forth herein.

18        551.   Plaintiff brings this claim on behalf of the Delaware Class.

19        552.   Defendant Kia was at all relevant times a merchant with respect to motor

20   vehicles within the meaning of 6 Del. Code § 2-104(1).

21        553.   A warranty that the Vehicles were in merchantable condition and fit for the

22   ordinary purpose for which vehicles are used is implied by law pursuant to Under 6 Del.

23   Code § 2-314.

24        554.   These Vehicles, when sold and at all times thereafter, were not in

25   merchantable condition and are not fit for the ordinary purpose for which cars are used.

26   Specifically, the Vehicles are defective in that the defects in that the Defect rendered

27

28

them unsafe, inconvenient, and imperfect such that Plaintiff and the other Delaware Class members would not have purchased the Vehicles had they known of the Defect.

555.   Defendant Kia knew about the Defect at the time of purchase, allowing it to cure its breach of warranty if it chose.

556.   Defendant Kia was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails, and other communications from Class members and from dealers and other repair facilities.

557.   As a direct and proximate result of Defendant Kia's breach of the implied warranty of merchantability, Plaintiff and the other Delaware Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution, and/or diminution of value.

**F.**    **Claims Brought on Behalf of Georgia Class**

**COUNT XVIII**
**VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT**
(GA. CODE ANN. § 10-1-390 ET SEQ.

558.   Plaintiff Helmly ("Plaintiff," for purposes of all Georgia Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

559.   Plaintiff brings this claim on behalf of the Georgia Class.

560.   The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code Ann. § 101-393(b), including, but not limited to, "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised," Ga. Code Ann. § 10-1-393(b).

561.   Plaintiff and Georgia Class members are "consumers" within the meaning of Ga. Code Ann. § 10-1-393(b).

562.   Defendant Hyundai engaged in "trade or commerce" within the meaning of Ga. Code Ann. § 10-1-393(b).

563.   Defendant Hyundai violated the Georgia FBPA by concealing and failing to disclose the security Defect. Defendant Hyundai had an ongoing duty to Plaintiff and the Georgia Class to refrain from unfair and deceptive practices under the Georgia FBPA in the course of its business.

564.   Plaintiff and the Georgia Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant Hyundai's concealments and/or failure to disclose material information.

565.   Plaintiff and Class members are entitled to recover damages and exemplary damages (for intentional violations) per Ga. Code Ann. § 10-1-399(a). On November 14, 2022, Plaintiff provided Defendant Hyundai with a written demand for relief pursuant to Ga. Code Ann. § 10-1-399(b).

566.   Plaintiff also seeks an order enjoining Defendant from unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia FBPA per Ga. Code Ann. § 10-1-399.

**COUNT XIX**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(GA. CODE. ANN. §§ 11-2-314 AND 11-2A-212)**

567.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

568.   Plaintiff brings this claim on behalf of the Georgia Class.

569.   Defendant Hyundai was at all relevant times a "merchant" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and a "seller" of motor vehicles under § 11-2-103(1)(d).

570.    The Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

571.    A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ga. Code Ann. §§ 11-2-314 and 11-2A-212.

572.    The Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles contain a security Defect that renders them unsafe, inconvenient, and imperfect such that Plaintiff and Class members would not have purchased the Vehicles had they known of the Defect.

573.    Defendant Hyundai knew about the security Defect at the time of purchase, allowing it to cure its breach of warranty if it chose.

574.    Defendant Hyundai was provided notice of the Defect by, among other things, numerous complaints about it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Georgia Class members and from dealers and other repair facilities.

575.    As a direct and proximate result of Defendant Hyundai's breach of the implied warranty of merchantability, Plaintiff and the other Georgia Class members have been damaged in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution, and/or diminution of value.

G.    **Claims Brought on Behalf of the Illinois Class**

**COUNT XX**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD**
**AND DECEPTIVE BUSINESS PRACTICES ACT**
**(815 ILCS 505/1, *ET SEQ*. AND 720 ILCS 295/1A)**

576.    Plaintiffs Duffin, Glennon, Beckwith, Latimer, Wilson, and Hardwell ("Plaintiffs" for purposes of all Illinois Class Counts) incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

577.    Plaintiffs bring this claim on behalf of the Illinois Class.

578.   The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including, but not limited to, the use of employment of any deception, fraud, false pretense, tales promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived, or damaged thereby." 815 ILCS 505/2.

579.   Defendants are "persons" as that term is defined in 815 ILCS 505/1(c).

580.   Plaintiffs and Class members are "consumers" as that term is defined in 815 ILCS 505/1(e).

581.   Defendants violated the Illinois CFA by concealing and failing to disclose the Defect. Defendants had an ongoing duty to Plaintiffs and the Illinois Class to refrain from unfair and deceptive practices under the Illinois CFA in the course of its business.

582.   Plaintiffs and the Illinois Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

583.   Pursuant to 815 ILCS 505/10a(a), Plaintiffs seek monetary relief against Defendants in the amount of actual damages as well as punitive damages because Defendants acted with fraud and/or malice and/or was grossly negligent.

584.   Plaintiffs also seek an order enjoining Defendants unfair and/or deceptive acts or practices, attorneys' fees, and any other just and proper relief available under 815 ILCS 505/1, *et seq*.

**COUNT XXI**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(810 ILCS §§ 5/2-314 AND 5/2A-212)**

585.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

586.   Plaintiffs bring this claim on behalf of the Illinois Class.

587.   Defendants were at all relevant times "merchants" with respect to motor vehicles under 810 ILCS §§ 5/2-104(1) and 5/2A-103(3), and "sellers" of motor vehicles under § 5/2-103(1)(d).

588.   The Vehicles are and were at all relevant times "goods" within the meaning of 810 ILCS §§ 5/2-105(1) and 5/2A-103(1)(h).

589.   A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 810 ILCS §§ 28-2-314 and 28-12-212.

590.   The Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that the security Defect rendered them unsafe, inconvenient, and imperfect such that Plaintiffs and the other Illinois Class members would not have purchased the Vehicles had they known of the Defect.

591.   Defendants knew about the Defect at the time of purchase, allowing them to cure their breach of warranty if they chose.

592.   Defendants were provided notice of these issues by numerous complaints against them by, among other things, the instant Complaint, and by customer complaints, letters, emails, and other communications from Class members and from dealers and other repair facilities.

593.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the other Illinois Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution, and/or diminution of value.

**H.     Claims Brought on Behalf of the Indiana Class**

**COUNT XXII**
**VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT**
**(IND. CODE § 24-5-0.5-3)**

594.   Plaintiffs Fisher, Roberts, and Douglas ("Plaintiffs," for purposes of all Indiana Class Counts) incorporate by reference all preceding allegations as though fully set forth herein.

595.   Plaintiffs bring this claim on behalf of the Indiana Class.

596.   Defendant Kia is a "person" within the meaning of Ind. Code § 24-5-0.5-2(2).

597.   The Indiana Class members' acquisitions of the Vehicles are "consumer transactions" within the meaning of Ind. Code § 24-5-.05-2(a)(1).

598.   Indiana's Deceptive Consumer Sales Act ("Indiana DCSA") prohibits a person or supplier from engaging in "an unfair, abusive or deceptive act, or omission, or practice in connection with a consumer transaction." "Deceptive acts" include: "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not: . . . (c) Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in writing that such representation is true if such

other supplier shall know or have reason to know that such representation was false." Ind. Code § 24-5-0.5-3.

599.   Defendant Kia participated in unfair and deceptive trade practices that violated the Indiana DCSA as described herein. Defendant Kia violated the Indiana

DCSA by misrepresenting and concealing and failing to disclose the security Defect. Defendant Kia had an ongoing duty to Plaintiffs and the Indiana Class to refrain from unfair and deceptive practices under the Indiana DCSA in the course of its business.

600.   Defendant Kia's unfair or deceptive acts or practices, including the above-mentioned concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers and were likely to and did in fact deceive reasonable consumers, including the Indiana Class members.

601.   As alleged above, in the course of its business, Defendant Kia intentionally and knowingly misrepresented material facts regarding the Vehicles' safety and reliability with an intent to mislead the Indiana Class members.

602.   Defendant Kia knew or should have known that its conduct violated the Indiana DCSA.

603.   To protect its profits, Defendant Kia concealed the security Defect and continued to allow unsuspecting new and used vehicle purchasers to continue to buy, lease, and drive the inherently defective Vehicles.

604.   Defendant Kia owed the Indiana Class members a duty to disclose the truth about the quality, reliability, durability, and safety of the Class Vehicles because Defendant:

      a.   Possessed exclusive knowledge of the Defect in the Class Vehicles;

      b.   Intentionally concealed the foregoing from the Indiana Class members; and/or

      c.   Made incomplete representations about the quality, reliability, durability, and safety of the Vehicles, while purposefully withholding material facts from the Indiana Class members that contradicted these representations

605.   Because Defendant Kia fraudulently concealed the security Defect in the Vehicles, and intentionally failed to disclose it to the Indiana Class members at the time

of purchase or lease, the Vehicles are worth significantly less than the amounts paid by the Indiana Class members at the time of purchase or lease. Indeed, consumers who purchased or leased the Class Vehicles would not have purchased or leased the Vehicles, or would have paid significantly less for them, had they known of the existence of this defect prior to purchase or lease.

606.   The Indiana Class members suffered ascertainable loss caused by Defendant Kia's failure to disclose material information. The Indiana Class members did not receive the benefit of their bargains as a result of Defendant Kia's misconduct.

607.   As a direct and proximate result of Defendant Kia's violations of the Indiana DCSA, the Indiana Class members have suffered injury-in-fact and/or actual damages.

608.   Pursuant to Ind. Code § 24-5-0.5-4, the Indiana Class members are entitled to monetary relief from Defendant Kia measured as the greater of (a) actual damages in an amount to be determined at trial, and (b) statutory damages in the amount of $500 for each Indiana Class Member, including treble damages up to $1,000 for Defendant Kia's willfully deceptive acts.

609.   The Indiana Class members also seek punitive damages based on the outrageousness and recklessness of Defendant Kia's conduct and Defendant Kia's high net worth.

610.   In accordance with Ind. Code § 24-5-0.5-5(a), Plaintiffs' counsel, on behalf of Plaintiffs, sent a letter to Defendant Kia with notice of their allegations regarding Defendant Kia's violations of the Indiana DCSA relating to the Class Vehicles and the Indiana Class members' demand that Defendant Kia correct or agree to correct the actions described therein. Defendant Kia has failed to do so. Plaintiffs therefore seek compensatory and monetary damages to which Plaintiffs and Indiana Class members are entitled.

1
2

**COUNT XXIII**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(IND. CODE § 26-1-2-314)**

3       611.   Plaintiffs incorporate by reference all preceding allegations as though fully

4   set forth herein.

5       612.   Plaintiffs bring this claim on behalf of the Indiana Class.

6       613.   Defendant Kia is a merchant with respect to motor vehicles.

7       614.   A warranty that the Vehicles were in merchantable condition was implied

8   by law in the transactions when Plaintiffs and Indiana Class members purchased or

9   leased their Vehicles from Defendant Kia.

10      615.   The Vehicles, when sold and at all times thereafter, were not in

11  merchantable condition and are not fit for the ordinary purpose for which cars are used.

12  Specifically, the Vehicles contain a security Defect that renders them unsafe,

13  inconvenient, and imperfect such that Plaintiffs and Class members would not have

14  purchased the Vehicles had they known of the Defect.

15      616.   Defendant Kia knew about the Defect at the time of purchase, allowing it

16  to cure its breach of warranty if they chose.

17      617.   Defendant Kia was provided notice of the Defect by, among other things,

18  numerous complaints about it, including the instant Complaint, and by customer

19  complaints, letters, emails and other communications from Indiana Class members and

20  from dealers and other repair facilities.

21      618.   As a direct and proximate result of Defendant Kia's breach of the implied

22  warranty of merchantability, Plaintiffs and the other Indiana Class members have been

23  damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-

24  bargain damages, restitution, and/or diminution of value.

25
26
27
28

I.     **Claims Brought on Behalf of the Kentucky Class**

**COUNT XXIV**
**VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT**
**(KY. REV. STAT. § 367.110, *ET SEQ.*)**

619.   Plaintiff Weinfurtner ("Plaintiff," for purposes of all Kentucky Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

620.   Plaintiff brings this claim on behalf of the Kentucky Class.

621.   Defendant Kia and Plaintiff are "persons" within the meaning of the Ky. Rev. Stat. § 367.110(1).

622.   Defendant Kia engaged in "trade" or "commerce" within the meaning of Ky. Rev. Stat. § 367.110(2).

623.   The Kentucky Consumer Protection Act ("Kentucky CPA") makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce . . . ." Ky. Rev. Stat. § 367.170(1). Defendant Kia participated in misleading, false, or deceptive acts that violated the Kentucky CPA. By systematically concealing the Defect in the Vehicles, Defendant Kia engaged in deceptive business practices prohibited by the Kentucky CPA. The security Defect would be material to a reasonable consumer.

624.   Defendant Kia's actions, as set forth above, occurred in the conduct of trade or commerce.

625.   In the course of its business, Defendant Kia systematically concealed the Defect in the Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendant Kia also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Vehicles.

626.   Defendant Kia knew that the Vehicles were defectively manufactured, and were not suitable for their intended use. Defendant Kia was previously provided notice of the defects in the Vehicles by, among other things, numerous customer complaints, letters, emails, and other communications from Class members and from dealers and other repair facilities. Defendant Kia nevertheless failed to warn Plaintiff about the Defect despite having a duty to do so.

627.   By failing to disclose and by actively concealing the Defect in Plaintiff's Vehicle, which it marketed as safe, reliable, and of high quality, Defendant Kia engaged in unfair and deceptive business practices in violation of the Kentucky CPA.

628.   In the course of Defendant Kia's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the Defect in the Vehicles.

629.   Defendant Kia's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true safety and reliability of its Vehicles.

630.   Defendant Kia intentionally and knowingly omitted material facts regarding the Vehicles with the intent to mislead Plaintiff.

631.   Defendant Kia knew or should have known that its conduct violated the Kentucky CPA.

632.   Defendant Kia owed Plaintiff a duty to disclose the true safety and reliability of the Vehicles because Defendant Kia:

a.   Possessed exclusive knowledge about the Defect in the Vehicles;

b.   Intentionally concealed the foregoing from Plaintiff; and/or

c.   Made incomplete representations about the safety and reliability of the Vehicles.

633.   Because Defendant Kia fraudulently concealed the Defect in the Vehicles, Vehicle owners were deprived of the benefit of their bargain since the Vehicles they purchased were worth less than they would have been if they were free from defects.

Had Vehicle owners been aware of the defects in their vehicles, they would have either not have bought their Vehicles or would have paid less for them.

634.   Vehicle owners were harmed by Defendant Kia's unfair and deceptive trade practices since their Vehicles were worth less as the result of Defendant Kia's concealment of, and failure to remedy, the Defect. This diminished value is directly attributed to Defendant Kia's dishonesty and omissions with respect to the quality and safety of the Vehicles.

635.   Defendant Kia's concealment of the Defect in Plaintiff's Vehicle was material to Plaintiff.

636.   Plaintiff suffered ascertainable loss caused by Defendant Kia's omissions and its concealment of and failure to disclose the Defect in the Vehicles.

637.   Defendant Kia's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

638.   As a direct and proximate result of Defendant Kia's violations of the Kentucky CPA, Plaintiff has suffered injury-in-fact and/or actual damage as alleged above.

639.   Pursuant to Ky. Rev. Stat. Ann. § 367.220, Plaintiff seeks to recover actual damages in an amount to be determined at trial; an order enjoining Defendant Kia's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under Ky. Rev. Stat. Ann. § 367.220.

**COUNT XXV**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(KY. REV. STAT. § 355.2-314)**

640.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

641.   Plaintiff brings this claim on behalf of the Kentucky Class.

642.   Defendant Kia was at all relevant times a "merchant" with respect to motor vehicles under Ky. Rev. Stat. § 355.2-104.

643.   The Vehicles are and were at all relevant times "goods" within the meaning of Ky. Rev. Stat. § 355.2-105.

644.   A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ky. Rev. Stat.§ 355.2-314.

645.   These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles contain a security Defect that renders them unsafe, unreliable, and imperfect such that Plaintiff and Class members would not have purchased the Vehicles had they known of the Defect.

646.   Defendant Kia knew about the Defect at the time of purchase, allowing it to cure its breach of warranty if it chose.

647.   Defendant Kia was provided notice of the Defect by, among other things, numerous complaints about it, including the instant Complaint, and by customer complaints, letters, emails, and other communications from Class members and from dealers and other repair facilities.

648.   As a direct and proximate result of Defendant Kia's breach of the implied warranty of merchantability, Plaintiff and the other Kentucky Class members have been damaged in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution, and/or diminution of value.

**J.      Claims Brought on Behalf of the Maryland Class**

COUNT XXVI
**VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT
(MD. CODE, COM. LAW § 13-101, ET SEQ.)**

649.    Plaintiffs O'Connor and Kesner ("Plaintiffs," for purposes of all Maryland Class Counts) incorporate by reference all preceding allegations as though fully set forth herein.

650.    This claim is brought on behalf of the Maryland Class.

651.    Defendant Kia and Plaintiffs are "persons" within the meaning of Md. Code, Com. Law § 13-101(h).

652.    The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale or lease of any consumer good. Md. Code, Com. Law § 13-303. Defendant Kia participated in misleading, false, or deceptive acts that violated the Maryland CPA. By systematically concealing the Defect in the Vehicles, Defendant Kia engaged in deceptive business practices prohibited by the Maryland CPA. The Defect would be material to a reasonable consumer.

653.    Defendant Kia's actions, as set forth above, occurred in the conduct of trade or commerce.

654.    In the course of its business, Defendant Kia concealed the Defect in Plaintiff's vehicle as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendant Kia also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Vehicles.

655.    Defendant Kia knew that the Vehicles were defectively manufactured and were not suitable for their intended use. Defendant Kia was previously provided notice of the security Defect in the Vehicles by numerous customer complaints, letters, emails,

and other communications from Class members and from dealers and other repair facilities. Defendant Kia nevertheless failed to warn Plaintiff about the Defect despite having a duty to do so.

656.   By failing to disclose and by actively concealing the Defect in Plaintiffs' Vehicles, which it marketed as safe, reliable, and of high quality, Defendant Kia engaged in unfair and deceptive business practices in violation of the Maryland CPA.

657.   In the course of Defendant Kia's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the Defect in Plaintiffs' Vehicles.

658.   Defendant Kia's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of their Vehicles.

659.   Defendant Kia intentionally and knowingly omitted material facts regarding the Class Vehicles with the intent to mislead Plaintiffs.

660.   Defendant Kia knew or should have known that its conduct violated the Maryland CPA.

661.   As alleged above, Defendant Kia made material statements about the safety and reliability of the Class Vehicles and the Defendant Kia's brand that were either false or misleading.

662.   Defendant Kia owed Plaintiffs a duty to disclose the true safety and reliability of the Class Vehicles because Defendant Kia:

        a.    Possessed exclusive knowledge about the Defect in the Class Vehicles;

        b.    Intentionally concealed the foregoing from Plaintiff; and/or

        c.    Made incomplete representations about the safety and reliability of the Class Vehicles.

663.   Because Defendant Kia fraudulently concealed the Defect in the Vehicles, Vehicle owners were deprived of the benefit of their bargain since the Vehicles they

purchased were worth less than they would have been if they were free from the Defect. Had Vehicle owners been aware of the Defect in their Vehicles, they would have either not have bought their Vehicles or would have paid less for them.

664.   Vehicle owners were also harmed by Defendant Kia's unfair and deceptive trade practices since their Vehicles were worth less as the result of Defendant Kia's concealment of, and failure to remedy, the Defect. This diminished value is directly attributed to Defendant Kia's dishonesty and omissions with respect to the quality and safety of the Vehicles.

665.   Defendant Kia's concealment of the Defect in Plaintiffs' vehicles was material to Plaintiffs.

666.   Plaintiffs suffered ascertainable loss caused by Defendant Kia's omissions and its concealment of and failure to disclose the Defect in the Vehicles.

667.   As a direct and proximate result of Defendant Kia's violations of the Maryland CPA, Plaintiffs have suffered injury-in-fact and/or actual damage as alleged above.

668.   Pursuant to Md. Code, Com. Law § 13-408, Plaintiffs seek actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

## COUNT XXVII
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (MD. CODE, COM. LAW § 2-314)

669.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

670.   This claim is brought on behalf of the Maryland Class.

671.   Defendant Kia was a merchant with respect to motor vehicles within the meaning of Md. Code, Com. Law § 2-104(1).

672.   Under Md. Code, Com. Law § 2-314, a warranty that the Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Vehicles from Defendant Kia.

673.  The Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that a security Defect renders them unsafe and unreliable.

674.  Defendant Kia was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails, and other communications from Class members and from dealers and other repair facilities.

675.  As a direct and proximate result of Defendant Kia's breach of the warranties of merchantability, Plaintiffs and the other Maryland Class members have been damaged in an amount to be proven at trial.

**K.    Claims Brought on Behalf of the Massachusetts Class**

**COUNT XXVIII**
**VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECT ACT**
**(MASS. GEN. LAWS CH. 93A)**

676.  Plaintiff Devonish ("Plaintiff," for purposes of all Massachusetts Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

677.  Plaintiff brings this claim on behalf of the Massachusetts Class.

678.  The conduct of Defendant Kia as set forth herein constitutes unfair and deceptive acts or practices in violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, including but not limited to Defendant Kia's manufacture, and sale of the Vehicles with the security Defect, which Defendant Kia failed to adequately disclose, and remedy, and its omissions regarding the safety, reliability, and functionality of its Vehicles, which omissions possessed the tendency to deceive.

679.  Defendant Kia engages in the conduct of trade or commerce and the misconduct alleged herein occurred in trade or commerce.

680.  Therefore, Plaintiff seeks monetary and equitable relief under the

Massachusetts Consumer Protection Act as a result of Defendant Kia's unfair and deceptive acts and practices. On November 14, 2022, and pursuant to Mass. Gen. Laws ch. 93A, § 9(3), Plaintiff sent notice and demand to Defendant Kia of its violations of the Massachusetts Consumer Protection Act.

**COUNT XXIX**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(MASS. GEN. LAWS CH. 106, § 2-314)**

681.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

682.    Plaintiff brings this claim on behalf of the Massachusetts Class.

683.    Defendant Kia is and was at all relevant times a merchant with respect to motor vehicles.

684.    A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

685.    These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles contain a security Defect that renders them unsafe and unreliable.

686.    Defendant Kia was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails, and other communications from Class members and from dealers and other repair facilities.

687.    As a direct and proximate result of Defendant Kia's breach of the warranties of merchantability, Plaintiff and the other Massachusetts Class members have been damaged in an amount to be proven at trial.

**L.     Claims Brought on Behalf of the Michigan Class**

**COUNT XXX**
**VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT**
**(MICH. COMP. LAWS § 445.901 *ET SEQ.*)**

688.   Plaintiff Catlos ("Plaintiff," for purposes of all Michigan Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

689.   Plaintiff brings this claim on behalf of the Michigan Class.

690.   Defendant Kia's business acts and practices alleged herein constitute unfair, unconscionable and/or deceptive methods, acts or practices under the Michigan Consumer Protection Act ("MCPA").

691.   At all relevant times, Plaintiff and all members of the Michigan Class were "persons" within the meaning of the MCPA, Mich. Comp. Laws § 445.902(1)(d).

692.   At all relevant times hereto, Defendant Kia was a "person" engaged in "trade or commerce" within the meaning of the MCPA, Mich. Comp. Laws § 445.902(1)(d) and (g).

693.   Defendant Kia's practices, as described throughout this Complaint, violate the MCPA for, inter alia, one or more of the following reasons:

a.     Defendant Kia represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have;

b.     Defendant Kia provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data, and other information to consumers regarding the performance, reliability, quality and nature of the Vehicles;

c.     Defendant Kia represented that goods or services were of a particular standard, quality, or grade, when they were of another;

d.     Defendant Kia engaged in unconscionable commercial practices in failing to reveal material facts and information about the Vehicles, which did, or tended

to, mislead Plaintiff and the Michigan Class about facts that could not reasonably be known by them;

e.      Defendant Kia failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

f.      Defendant Kia caused Plaintiff and the Michigan Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

g.      Defendant Kia failed to reveal material facts to Plaintiff and the Michigan Class, the omission of which would tend to mislead or deceive consumers, including Plaintiff and the Michigan Class; and

h.      Defendant Kia made material representations and statements of fact to Plaintiff and the Michigan Class that resulted in Plaintiff and the Michigan Class reasonably believing the represented or suggested state of affairs to be other than what they actually were.

694.   Defendant Kia intended that Plaintiff and the other members of the Michigan Class rely on its misrepresentations and omissions, so that Michigan Plaintiffs and other Michigan Class members would purchase the Vehicles.

695.   Under all of these circumstances, Defendant Kia's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous, such as to shock the conscience of the community and warrant the imposition of punitive damages.

696.   The foregoing acts, omissions and practices proximately caused Plaintiff and other members of the Michigan Class to suffer actual damages in the form of, inter alia, diminution in value of the Vehicles, and Plaintiff and the Michigan Class are entitled to recover such damages, together with appropriate exemplary damages, attorneys' fees, and costs of suit.

1

2

**COUNT XXXI**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(MICH. COMP. LAWS § 440.2314)**

3       697.   Plaintiff incorporates by reference all preceding allegations as though fully

4   set forth herein.

5       698.   Plaintiff brings this claim on behalf of the Michigan Class.

6       699.   Defendant Kia is and was at all relevant times a merchant with respect to

7   the Vehicles.

8       700.   A warranty that the Vehicles were in merchantable quality and condition

9   is implied by law pursuant to Mich. Comp. Laws § 440.2314.

10      701.   Defendant Kia impliedly warranted that the Vehicles were of good and

11  merchantable condition and quality—fit and safe for their ordinary intended use.

12      702.   The Vehicles were defective at the time they left the possession of

13  Defendant Kia. Defendant Kia knew of the security Defect at the time these transactions

14  occurred. Thus, the Vehicles, when sold and at all times thereafter, were not in

15  merchantable condition or quality and are not fit for their ordinary intended purpose.

16      703.   By virtue of the conduct described herein and throughout this Complaint,

17  Defendant Kia breached the implied warranty of merchantability.

18      704.   Plaintiff and the Michigan Class members have been damaged as a direct

19  and proximate result of Defendant Kia's breach of the implied warranty.

20      705.   Plaintiff and the Michigan Class have performed each and every duty

21  required under the terms of the warranties, except as may have been excused or

22  prevented by the conduct of Defendant Kia or by operation of law in light of Defendant

23  Kia's unconscionable conduct.

24      706.   Defendant Kia received timely notice regarding the problems at issue in

25  this litigation (indeed, Defendant Kia knew of the defects prior to offering the Vehicles

26  for sale or lease) and, notwithstanding such notice, Defendant Kia has failed and refused

27  to offer an effective remedy.

28

707.   Defendant Kia has received numerous complaints and other notices from consumers advising it of the Defect associated with the Vehicles.

708.   Plaintiff has had sufficient dealings with either Defendant Kia or its agents (dealerships) to establish privity of contract. Notwithstanding this, privity is not required in this case because Plaintiff and the Michigan Class members are intended third-party beneficiaries of contracts between Defendant Kia and its dealers; specifically, they are intended beneficiaries of Defendant's implied warranties. The dealers were not intended to be the ultimate consumers of the Vehicles and have no rights under the warranty agreements provided with the Vehicles. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

709.   As a direct and proximate result of Defendant Kia's breach of warranties, Plaintiff and the Michigan Class were caused to suffer economic damage, including loss attributable to the diminished value of their Vehicles, as well as the monies spent and to be spent to repair and/or replace their Vehicles.

## M.   Claims Brought on Behalf of the Minnesota Class

### COUNT XXXII
### VIOLATION OF THE MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (MINN. STAT. § 325D.43-48, *ET SEQ.*)

710.   Plaintiffs Sutton, Dehler, and Pope ("Plaintiffs," for purposes of all Minnesota Class Counts) hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

711.   This claim is brought by Plaintiffs on behalf of the Minnesota Class.

712.   Defendant Kia engaged in—and continues to engage in—conduct that violates the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44, et seq. The violations include the following:

a. Defendant Kia violated Minn. Stat. § 325D.44(5) by misrepresenting the characteristics, uses, and benefits of the Vehicles by failing to disclose the security Defect in the Vehicles;

b. Defendant Kia violated Minn. Stat. § 325D.44(7) by misrepresenting the standard, quality, or grade of the Vehicles by failing to disclose the security Defect in the Vehicles;

c. Defendant Kia violated Minn. Stat. § 325D.44(9) by advertising goods with intent not to sell them as advertised by failing to disclose the security Defect in the Vehicles; and

d. Defendant Kia violated Minn. Stat. § 325D.44(13) by creating a likelihood of confusion and/or making misrepresentations regarding the Vehicles by failing to disclose the security Defect in the Vehicles.

713.   Defendant Kia's deceptive sales practices were carried out in Minnesota and affected Plaintiffs and the Minnesota Class.

714.   As a direct and proximate result of Defendant Kia's deceptive conduct and violation of Minn. Stat. § 325D.44, et seq., Plaintiffs and the Minnesota Class have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

### COUNT XXXIII
### VIOLATION OF THE MINNESOTA PREVENTION
### OF CONSUMER FRAUD ACT
### (MINN. STAT. § 325F.68, *ET SEQ.*)

715.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

716.   This claim is brought by Plaintiffs on behalf of the Minnesota Class.

717.   Defendant Kia violated Minn. Stat. § 325F.69 by its misrepresentation and deceptive practices in the sale of Vehicles, which contain the security Defect that Defendant Kia knew about but failed to disclose.

718.   Defendant Kia intended that Plaintiffs and the Minnesota Class rely on its silence in their decision regarding whether to purchase or lease and how much to pay to purchase or lease the Vehicles.

719.   The Minnesota Prevention of Consumer Fraud Act applies to Defendant Kia's transactions with Plaintiff and the Minnesota Class because Defendant Kia's deceptive scheme was carried out in Minnesota and affected Plaintiffs and the Minnesota Class.

720.   As a direct and proximate result of Defendant Kia's deceptive conduct and violation of Minn. Stat. § 325F.69, Plaintiffs and the Minnesota Class have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief, in an amount to be proven at trial, including diminution of value.

**COUNT XXXIV**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(MINN. STAT. § 336.2-314)**

721.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

722.   Plaintiffs bring this Count on behalf of the Minnesota Class.

723.   Defendant Kia is and was at all relevant times a merchant with respect to the Vehicles.

724.   A warranty that the Vehicles were in merchantable quality and condition is implied by law pursuant to Minn. Stat. § 336.2-314.

725.   Defendant Kia impliedly warranted that the Vehicles were of good and merchantable condition and quality—fit and safe for their ordinary intended use.

726.   The Vehicles were defective at the time they left the possession of Defendant Kia. Defendant Kia knew of the security Defect at the time these transactions occurred. Thus, the Vehicles, when sold and at all times thereafter, were not in merchantable condition or quality and are not fit for their ordinary intended purpose.

727.   By virtue of the conduct described herein and throughout this Complaint, Defendant Kia breached the implied warranty of merchantability.

728.   Plaintiffs and the Minnesota Class members have been damaged as a direct and proximate result of Defendant Kia's breach of the implied warranty.

729.   Plaintiffs and the Minnesota Class have performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendant Kia or by operation of law in light of Defendant Kia's unconscionable conduct.

730.   Defendant Kia received timely notice regarding the problems at issue in this litigation (indeed, Defendant Kia knew of the Defect prior to offering the Vehicles for sale or lease) and, notwithstanding such notice, Defendant Kia has failed and refused to offer an effective remedy.

731.   Defendant Kia has received numerous complaints and other notices from consumers advising it of the security Defect associated with the Vehicles.

732.   Plaintiffs have had sufficient dealings with either Defendant Kia or its agents (dealerships) to establish privity of contract. Notwithstanding this, privity is not required in this case because Plaintiffs and the Minnesota Class members are intended third-party beneficiaries of contracts between Defendant Kia and its dealers; specifically, they are intended beneficiaries of Defendant Kia' implied warranties. The dealers were not intended to be the ultimate consumers of the Vehicles and have no rights under the warranty agreements provided with the Vehicles. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

733.   As a direct and proximate result of Defendant Kia's breach of warranties, Plaintiffs and the Minnesota Class were caused to suffer economic damage, including loss attributable to the diminished value of their Vehicles, as well as the monies spent and to be spent to repair and/or replace their Covered Vehicles.

**N.     Claims Brought on Behalf of the North Carolina Class**

**COUNT XXXV**
**VIOLATION OF THE NORTH CAROLINA UNFAIR AND**
**DECEPTIVE TRADE PRACTICES ACT**
**(N.C. GEN. STAT. §75.1-1)**

734.     Plaintiff Roberts ("Plaintiff" for purposes of all North Carolina Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

735.     This claim is brought by Plaintiff on behalf of the North Carolina Class.

736.     North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75.1-1 ("UDTPA") prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." Defendant Kia's business acts and practices alleged herein violate the UDTPA.

737.     The purchase or lease of the Vehicles by Plaintiff and the North Carolina Class members as described herein constitute transactions in commerce within the meaning of UDTPA.

738.     Defendant Kia violated the UDTPA by concealing and failing to disclose the Defect. Defendant Kia had an ongoing duty to Plaintiff and the North Carolina Class members to refrain from unfair and deceptive practices under the UDTPA in the course of its business.

739.     The practices of Defendant Kia violate the UDTPA for, inter alia, one or more of the following reasons: Defendant Kia represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have; Defendant Kia provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, safety, quality, and nature of the Vehicles; Defendant Kia represented that goods or services were of a particular standard, quality, or grade, when they were of another; Defendant Kia engaged in unconscionable

commercial practices in failing to reveal material facts and information about the Vehicles, which did, or tended to, mislead Plaintiff and the North Carolina Class members about facts that could not reasonably be known by the consumer; Defendant Kia failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner; Defendant Kia caused Plaintiff and the North Carolina Class members to suffer a probability of confusion and a misunderstanding of legal rights, obligations, and/or remedies by and through its conduct; Defendant Kia failed to reveal material facts to Plaintiff and the North Carolina Class members, the omission of which would tend to mislead or deceive consumers, including Plaintiff and the North Carolina Class members; Defendant Kia made material representations and statements of fact to Plaintiff and the North Carolina Class members that resulted in them reasonably believing the represented or suggested state of affairs to be other than what they actually were; Defendant Kia intended that Plaintiff and the North Carolina Class members rely on their misrepresentations and omissions, so that they would purchase the Vehicles.

740.     Under all of these circumstances, Defendant Kia's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton, and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

741.     The conduct of Defendant Kia was likely to mislead consumers and Defendant Kia intended that Plaintiff and the North Carolina Class members rely on their misrepresentations.

742.     The conduct of Defendant Kia offends established public policy and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

743.     The foregoing acts, omissions, and practices proximately caused Plaintiff and the North Carolina Class members to suffer an ascertainable loss in the form of, inter alia, overpayment and diminution in value of the Vehicles, and Plaintiff and the

North Carolina Class members are entitled to recover such damages, together with appropriate exemplary damages, attorneys' fees, and costs of suit.

## COUNT XXXVI
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.C. GEN. STAT. § 25-2-314)

744.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

745.     Plaintiff brings this claim on behalf of the North Carolina Class.

746.     Defendant Kia is a merchant in the sale and lease of the Vehicles to Plaintiff and the North Carolina Class members, pursuant to the N.C. Gen. Stat. § 25-2-314.

747.     By operation of law, Defendant Kia provided Plaintiff and the North Carolina Class members an implied warranty that the Vehicles are merchantable and fit for the ordinary purposes for which they were sold.

748.     By the conduct described herein, Defendant Kia failed and refused to conform the Vehicles to the warranties and its conduct has voided any attempt on its part to disclaim liability for its actions.

749.     The Vehicles were defective at the time they left the possession of Defendant Kia.

750.     The Vehicles were not of merchantable quality as required under N.C. Gen. Stat. § 25-2-314.

751.     By virtue of the conduct described herein, Defendant Kia breached the implied warranty of merchantability.

752.     Plaintiff and the North Carolina Class members have been damaged as a result of Defendant Kia's breach of the implied warranty.

753.     Plaintiff and the North Carolina Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendant Kia or by operation of law in light of

Defendant Kia's unconscionable conduct.

754.     Plaintiff and the North Carolina Class members have provided timely notice to Defendant Kia regarding the problems they experienced with the Vehicles and, notwithstanding such notice, Defendant Kia has failed and refused to offer Plaintiff and the North Carolina Class members an effective remedy.

755.     In addition, Defendant Kia has received, on information and belief, thousands of complaints and other notices from consumers advising them of the security Defect associated with the Vehicles.

756.     These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that they contain a security Defect rendering them unsafe, inconvenient, and imperfect such that Plaintiff and Class members would not have purchased the Vehicles had they known of the Defect.

757.     Defendant Kia knew about the Defect at the time of purchase, allowing it to cure its breach of warranty if it chose.

758.     As a direct and proximate result of Defendant Kia's breach of the implied warranty of merchantability, Plaintiff and the other North Carolina Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution, and/or diminution of value.

**O.     Claims Brought on Behalf of the Ohio Class**

**COUNT XXXVII**
**VIOLATIONS OF THE CONSUMER SALES PRACTICES ACT**
**(OHIO REV. CODE §§ 1345.01, ET SEQ)**

759     Plaintiffs Cummings and Donahue ("Plaintiffs," for purposes of all Ohio Class Counts) incorporate by reference all preceding allegations as though fully set forth herein.

760.     Plaintiffs bring this claim on behalf of the Ohio Class.

761.     Plaintiffs and the other Ohio Class members are "consumers" as defined

by the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 ("OCSPA").

762.   Defendants are "suppliers" as defined by the OCSPA. Plaintiffs' and the other Ohio Class members' purchases or leases of Class Vehicles were "consumer transactions" as defined by the OCSPA.

763.   By failing to disclose and actively concealing the Defect, Defendants engaged in deceptive business practices prohibited by the OCSPA, including engaging in acts or practices which are unfair, misleading, false, or deceptive to the consumer.

764.   Defendants knew that the Vehicles were defectively manufactured and were not suitable for their intended use. Defendants nevertheless failed to warn Plaintiffs about the Defect despite having a duty to do so.

765.   Defendants owed Plaintiffs a duty to disclose the Defect, because Defendants:

  i)    Possessed exclusive knowledge of the Defect rendering the Class Vehicles more unreliable and less safe than similar vehicles;

  ii)   Intentionally concealed the Defect; and/or

  iii)  Made incomplete representations about the characteristics and performance of the Vehicles, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

766.   Defendants' unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiffs, about the true performance and characteristics of the Vehicles.

767.   The Ohio Attorney General has made available for public inspection prior state court decisions which have held that the acts and omissions of Defendants in this Complaint, including, but not limited to, the failure to honor both implied warranties, the making and distribution of false, deceptive, and/or misleading representations, and the concealment and/or non-disclosure of a dangerous defect, constitute deceptive sales

practices in violation of the OCSPA. These cases include, but are not limited to, the following:

i)    *Mason v. Mercedes Benz USA, LLC* (OPIF #10002382);

ii)   *State ex rel. Betty D. Montgomery v. Honda Motor Co.* (OPIF #10002123);

iii)  *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF#10002025);

iv)   *Bellinger v. Hewlett-Packard Co.* (OPIF #10002077);

v)    *Borror v. MarineMax of Ohio,* (OPIF #10002388);

vi)   *State ex rel. Jim Petro v. Craftmatic Organization, Inc.* (OPIF #10002347);

vii)  *Mark J. CrawDefendants, et al. v. Joseph Airport Toyota, Inc.* (OPIF #10001586);

viii) *State ex rel. William J. Brown v. Harold Lyons, et al.* (OPIF #10000304);

ix)   *Brinkman v. Mazda Motor of America, Inc.* (OPIF #10001427);

x)    *Khouri v. Don Lewis* (OPIF #100001995);

xi)   *Mosley v. Performance Mitsubishi aka Automanage* (OPIF #10001326);

xii)  *Walls v. Harry Williams dba Butch's Auto Sales* (OPIF #10001524);; and

xiii) *Brown v. Spears* (OPIF #10000403);.

xiv)  *State ex rel. Brown v. Bud Fletcher Used Cars, Inc.* (OPIF #10000228)

xv)   *State ex rel. Celebrezze v. Metro Toyota, Inc.* (OPIF #10001194); and

xvi)  *Shellhorn v. Kohler Chrysler-Plymouth, Inc.,* (OPIF #10001309)

768.   As a result of its violations of the OCSPA detailed above, Defendants caused actual damage to Plaintiffs and the Ohio Class and, if not stopped, will continue to harm Plaintiffs and the Ohio Class. The Defect has caused the value of Class Vehicles to decrease.

769.   Plaintiffs and the Class sustained damages as a result of Defendants' unlawful acts and are, therefore, entitled to damages and other relief as provided under the OCSPA.

770.   Plaintiffs also seek court costs and attorneys' fees as a result of Defendants' violation of the OCSPA as provided in Ohio Rev. Code § 1345.09.

**COUNT XXXVIII**
**BREACH OF IMPLIED WARRANTY IN TORT**
**(BASED ON OHIO LAW)**

771.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

772.   Plaintiffs bring this claim on behalf of the Ohio Class.

773.   The Class Vehicles contained the Defect, resulting in loss of the Vehicles' crucial safety and reliability functions, as detailed herein more fully.

774.   The Defect existed at the time these Class Vehicles left the hands of Defendants.

775.   Based upon the dangerous product defect and its certainty to occur, Defendants failed to meet the expectations of a reasonable consumer. The Class Vehicles failed their ordinary, intended use because the Defect prevents the Vehicles from being safely and reliably used as a reasonable consumer would expect. Moreover, it presents a serious danger to Plaintiffs and the other Class members that cannot be eliminated without significant cost.

776.   The Defect in these Class Vehicles was the direct and proximate cause of economic damages to Plaintiffs and the Ohio Class.

**P.     Claims Brought on Behalf of the Pennsylvania Class**

**COUNT XXXIX**
**VIOLATION OF PENNSYLVANIA UNFAIR TRADE**
**PRACTICES AND CONSUMER PROTECTION LAW**
**(73 P.S. § 201-1, ET SEQ.)**

777.   Plaintiff Eberhardt ("Plaintiff" for purposes of all Pennsylvania Class Counts) hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

778.   This claim is brought by Plaintiff on behalf of the Pennsylvania Class.

779.   Defendant Kia's business acts and practices alleged herein constitute unfair, unconscionable and/or deceptive methods, acts or practices under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq*. ("PUTPCPL").

780.   At all relevant times, Plaintiff and all members of the Pennsylvania Class were "consumers" within the meaning of the PUTPCPL, 73 P.S. § 201-1.

781.   Defendant Kia's conduct, as set forth herein, occurred in the conduct of a sale within the meaning of the PUTPCPL, 73 P.S. § 201-1.

782.   The practices of Defendant Kia, described above, violate the PUTPCPL for, inter alia, one or more of the following reasons:

i.     Defendant Kia engaged in unconscionable commercial practices in failing to reveal material facts and information about the Vehicles, which did, or tended to, mislead Plaintiff and the Pennsylvania Class members about facts that could not reasonably be known by the consumer;

ii.    Defendant Kia failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

iii.    Defendant Kia caused Plaintiff and the Pennsylvania Class members to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

iv.    Defendant Kia failed to reveal material facts to Plaintiff and the Pennsylvania Class members with the intent that Plaintiff and the Pennsylvania Class members rely upon the omission;

v.    Defendant Kia made material representations and statements of fact to Plaintiff and the Pennsylvania Class that resulted in Plaintiff and the Pennsylvania Class members reasonably believing the represented or suggested state of affairs to be other than what they actually were;

vi.    Defendant Kia intended that Plaintiff and the other members of the Pennsylvania Class rely on their and omissions, so that Plaintiff and other Pennsylvania Class members would purchase the Vehicles; and

vii.    Under all of the circumstances, Defendant Kia's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

783. Defendant Kia's actions impact the public interest because Plaintiff and members of the Pennsylvania Class were injured in exactly the same way as thousands of others purchasing and/or leasing the Vehicles as a result of and pursuant to Defendant Kia's generalized course of deception.

784. Had Plaintiff and other members of the Pennsylvania Class known of the defective nature of the Vehicles, they would not have purchased or leased the Vehicles or would have paid less for their them.

785.   The foregoing acts, omissions, and practices proximately caused Plaintiff and other members of the Pennsylvania Class to suffer an ascertainable loss and actual damages in the form of, inter alia, overpaying for their Vehicles that have suffered a diminution in value.

786.   Defendant Kia violated the PUTPCPL by concealing and failing to disclose the Defect. Defendant Kia had an ongoing duty to Plaintiff and the Pennsylvania Class to refrain from unfair and deceptive practices under the PUTPCPL in the course of its business.

787.   Plaintiff and the Pennsylvania Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant Kia's concealments, misrepresentations, and/or failure to disclose material information.

788.   Defendant Kia is liable to Plaintiff and Pennsylvania Class members for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Defendant's unfair and deceptive practices, and any other just and proper relief.

## COUNT XL
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (PA. U.C.C. § 2314)

789.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

790.   Plaintiff brings this Count on behalf of the Pennsylvania Class.

791.   Defendant Kia is and was at all relevant times a merchant with respect to the Vehicles.

792.   The Vehicles are and were at all relevant times "goods."

793.   A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Pa. U.C.C. § 2314.

794.   The Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles' security Defect renders them unsafe, inconvenient, and imperfect such that Plaintiff and the other Pennsylvania Class members would not have purchased the Vehicles had they known of the defects.

795.   Defendant Kia knew about the Defect at the time of purchase, allowing it to cure its breach of warranty if it chose.

796.   Defendant Kia was provided notice of these issues by, among other things, numerous complaints about it, including the instant Complaint, and by customer complaints, letters, emails, and other communications from Class members and from dealers and other repair facilities.

797.   As a direct and proximate result of Defendant Kia's breach of the implied warranty of merchantability, Plaintiff and the other Pennsylvania Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution, and/or diminution of value.

**Q.    Claims Brought on Behalf of the Rhode Island Class**

**COUNT XLI**
**VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES**
**AND CONSUMER PROTECTION ACT**
**(R.I. GEN. LAWS § 6-13.1, *ET SEQ*.)**

798.   Plaintiff Jacobs ("Plaintiff" for purposes of all Rhode Island Class Counts) incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

799.   Plaintiff brings this claim on behalf of the Rhode Island Class.

800.   Rhode Island's Unfair Trade Practices and Consumer Protection Act ("Rhode Island CPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce" including: "(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; "(vii) Representing that goods or services are of a particular standard,

quality, or grade ..., if they are of another"; "(ix) Advertising goods or services with intent not to sell them as advertised"; "(xii) Engaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding"; "(xiii) Engaging in any act or practice that is unfair or deceptive to the consumer"; and "(xiv) Using any other methods, acts or practices which mislead or deceive members of the public in a material respect." R.I. Gen. Laws § 6-13.1-1(6).

801.   Plaintiff is a person who purchased or leased one or more Vehicles primarily for personal, family, or household purposes within the meaning of R.I. Gen. Laws § 6-13.1-5.2(a).

802.   Defendant Hyundai violated the Rhode Island CPA by concealing and failing to disclose the Defect. Defendant Hyundai had an ongoing duty to Plaintiff and the Rhode Island Class to refrain from unfair and deceptive practices under the Rhode Island CFA in the course of its business.

803.   Plaintiff and the Rhode Island Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant Hyundai's concealment, misrepresentations, and/or failure to disclose material information.

804.   Plaintiff is entitled to recover the greater of actual damages or $200 pursuant to R.I. Gen. Laws § 6-13.1-5.2(a). Plaintiff also seeks punitive damages in the discretion of the Court because Defendant Hyundai acted with fraud and/or malice and/or was grossly negligent.

## COUNT XLII
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (R.I. GEN. LAWS § 6A-2-314)

805.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

806.   Plaintiff brings this claim on behalf of the Rhode Island Class.

807.   Defendant Hyundai is and was at all relevant times a merchant with respect to the Vehicles.

808.   Under Rhode Island law, a warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law.

809.   These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that the defects in that the Defect rendered them unsafe, inconvenient, and imperfect such that Plaintiff and the other Rhode Island Class members would not have purchased the Vehicles had they known of the Defect.

810.   Defendant Hyundai knew about the Defect at the time of purchase, allowing it to cure their breach of warranty if it chose.

811.   Defendant Hyundai was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails, and other communications from Class members and from dealers and other repair facilities.

812.   As a direct and proximate result of Defendant Hyundai's breach of the implied warranty of merchantability, Plaintiff and the other Rhode Island Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution, and/or diminution of value.

**R.     Claims Brought on Behalf of the Tennessee Class**

**COUNT XLIII**
**VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT OF 1977**
**(TENN. CODE ANN. § 47-18-101, *ET SEQ.*)**

813.   Plaintiff Helm ("Plaintiff" for purposes of all Tennessee Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

814.   This claim is brought by Plaintiff on behalf of the Tennessee Class.

815.   The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code § 47-18-104.

816.   Plaintiff and the Tennessee Class are "natural persons" and "consumers" within the meaning of Tenn. Code § 47-18-104.

817.   Defendant Hyundai is engaged in "trade" or "commerce" or "consumer transactions" within the meaning of Tenn. Code § 47-18-103(9).

818.   Defendant Hyundai's conduct, as set forth above, occurred in the conduct of trade or commerce.

819.   By concealing and failing to disclose the security Defect, Defendant Hyundai violated the Tennessee CPA. Defendant Hyundai had an ongoing duty to Plaintiff and the other Tennessee Class members to refrain from unfair and deceptive practices under the Tennessee CPA in the course of its business.

820.   Plaintiff and the other Tennessee Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant Hyundai's concealments, misrepresentations, and/or failure to disclose material information.

821.   Pursuant to Tenn. Code §§ 47-18-109 and 47-18-109(a)(3), Plaintiff and the other Tennessee Class members seek an order enjoining Defendant Hyundai's unfair, unlawful, or deceptive practices, declaratory relief, punitive damages, attorneys' fees, and any other just and proper remedy under the Tennessee CPA.

**COUNT XLIV**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(TENN. CODE §§ 47-2-314 AND 47-2A-212)**

822.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

823.   Plaintiff brings this claim on behalf of the Tennessee Class.

824.   Defendant Hyundai was at all relevant times a "merchant" with respect to motor vehicles under Tenn. Code §§ 47-2-104(1) and 47-2A-103(1)(t), and a "seller" of motor vehicles under § 47-2-103(1)(d).

825.   The Vehicles are and were at all relevant times "goods" within the meaning of Tenn. Code §§ 47-2-105(1) and 47-2A-103(1)(h).

826.   A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Tenn. Code §§ 47-2-314 and 47-2A-212.

827.   The Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that the security Defect renders them unsafe, unreliable, inconvenient, and imperfect such that Plaintiff and the other Tennessee Class members would not have purchased the Vehicles had they known of the Defect.

828.   Defendant Hyundai knew about the Defect at the time of purchase, allowing it to cure its breach of warranty if it chose.

829.   Defendant Hyundai was provided notice of the Defect by numerous complaints about it, including the instant Complaint, and by customer complaints, letters, emails, and other communications from Class members and from dealers and other repair facilities.

830.   As a direct and proximate result of Defendant Hyundai's breach of the implied warranty of merchantability, Plaintiff and the other Tennessee Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution, and/or diminution of value.

**S.     Claims Brought on Behalf of the Texas Class**

**COUNT XLV**
**VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT**
**(TEX. BUS. & COM. CODE §§ 17.41, *ET SEQ.*)**

831.   Plaintiff Catlos ("Plaintiff," for purposes of all Texas Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

832.   Plaintiff brings this Count on behalf of the Texas Class.

833.   Plaintiff and Defendant Kia are each "persons" as defined by Tex. Bus. & Com. Code § 17.45(3). The Class Vehicles are "goods" under Tex. Bus. & Com. Code § 17.45(1). Plaintiff and the other Texas Class members are "consumers" as defined in

Tex. Bus. & Com. Code § 17.45(4). Defendant Kia has at all relevant times engaged in "trade" and "commerce" as defined in Tex. Bus. & Com. Code § 17.45(6), by advertising, offering for sale, selling, leasing, and/or distributing the Vehicles in Texas, directly or indirectly affecting Texas citizens through that trade and commerce.

834.   The allegations set forth herein constitute false, misleading, or deceptive trade acts or practices in violation of Texas's Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code §§ 17.41, *et seq.*

835.   By failing to disclose and actively concealing the security Defect in Vehicles, Defendant Kia engaged in deceptive business practices prohibited by the DTPA, including engaging in acts or practices which are unfair, misleading, false, or deceptive to the consumer.

836.   Defendant Kia knew that the security systems in the Vehicles were defectively manufactured and were not suitable for their intended use. Defendant Kia nevertheless failed to warn Plaintiff about the Defect despite having a duty to do so.

837.   Defendant Kia owed Plaintiff a duty to disclose the defective nature of the Vehicles, because Defendant Kia:

    i)      Possessed exclusive knowledge of the Defect rendering the Class Vehicles less safe and less reliable than similar vehicles;

    ii)     Intentionally concealed the Defect associated with the security systems; and/or

    iii)    Made incomplete representations about the characteristics and performance of the Vehicles generally, while purposefully withholding material facts from Plaintiff that contradicted these representations.

838.   Defendant Kia's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true performance and characteristics of the Vehicles.

839.   Defendant Kia's intentional concealment of and failure to disclose the defective nature of the Vehicles to Plaintiff and the other Texas Class members constitutes an "unconscionable action or course of action" under Tex. Bus. & Com. Code § 17.45(5) because, to the detriment of Plaintiff and the other Texas Class members, that conduct took advantage of their lack of knowledge, ability, and experience to a grossly unfair degree. That "unconscionable action or course of action" was a producing cause of the economic damages sustained by Plaintiff and the other Texas Class members.

840.   Defendant Kia is also liable under Tex. Bus. & Com. Code § 17.50(a) because Defendant Kia's breach of the implied warranty of merchantability set forth herein was a producing cause of economic damages sustained by Plaintiff and the other Texas Class members.

841.   As a result of its violations of the DTPA detailed above, Defendant Kia caused actual damage to Plaintiff and, if not stopped, will continue to harm Plaintiff. Plaintiff currently owns or leases, or within the class period has owned or leased, a Vehicle that is defective. Defects associated with the Vehicles' security systems have caused the value of Class Vehicles to decrease.

842.   All procedural prerequisites, including notice, have been met. The giving of notice to Defendant Kia is rendered impracticable pursuant to Tex. Bus. & Com. Code § 17.505(b) and unnecessary because Defendant Kia has notice of the claims against it through the numerous complaints filed against it. On November 14, 2022, pursuant to Tex. Bus. & Com. Code § 17.505(a), Plaintiff, individually and on behalf of the other Texas Class members, sent Defendant Kia a written notice that advised them in reasonable detail of Plaintiff and the Texas Class members' specific complaint and the amount of economic damages and expenses, including attorneys' fees, reasonably incurred to date in asserting the claim against Defendant Kia. On November 14, 2022, pursuant to Tex. Bus. & Com. Code § 17.501, Plaintiff, individually and on behalf of

the other Texas Class members, sent the Texas Consumer Protection Division a copy of this Complaint.

843.   Plaintiff and the Texas Class sustained damages as a result of the Defendant Kia's unlawful acts and are, therefore, entitled to damages and other relief as provided under the DTPA.

844.   Plaintiff and the other Texas Class members should be awarded three times the amount of their economic damages because Defendant Kia intentionally concealed and failed to disclose the defective nature of the Vehicles.

**COUNT XLVI**
**BREACH OF IMPLIED WARRANTY**
**(BASED ON TEXAS LAW)**

845.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

846.   Plaintiff brings this Count on behalf of the Texas Class.

847. Defendant Kia is and was at all relevant times a merchant with respect to motor vehicles under Tex. Bus. & Com. Code § 2.104.

848.   A warranty that the Vehicles were in merchantable condition was implied by law in the instant transactions, pursuant to Tex. Bus. & Com. Code § 2.314. These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which they are used. Specifically, the Class Vehicles are inherently defective in that the security Defect prevents users from enjoying many features of the Vehicles they purchased and/or leased and that they paid for.

849.   Defendant Kia was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Texas Class members and from dealers and other repair facilities.

850.   As a direct and proximate result of Defendant Kia's breach of the warranties of merchantability, Plaintiff and the Texas Class have been damaged in an amount to be proven at trial.

**T.     Claims Brought on Behalf of the Wisconsin Class**

**COUNT XLVII**
**VIOLATION OF WISCONSIN DECEPTIVE TRADE PRACTICES ACT**
**(WIS. STAT. § 100.18)**

851.   Plaintiff Scalise ("Plaintiff' for purposes of all Wisconsin Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

852.   This claim is brought by Plaintiff on behalf of the Wisconsin Class.

853.   Defendant Kia is a "person[s], firm[s], corporation[s] or association[s]" within the meaning of Wis. Stat. § 100.18(1).

854.   Plaintiff and Wisconsin Class members are members of "the public" within the meaning of Wis. Stat. § 100.18(1).

855.   The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits a "representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1).

856.   By concealing and failing to disclose the Defect, Defendant Kia violated the Wisconsin DTPA. Defendant Kia had an ongoing duty to Plaintiff and the other Wisconsin Class members to refrain from unfair and deceptive practices under the Wisconsin DTPA in the course of its business.

857.   Plaintiff and the other Wisconsin Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant Kia's concealments, misrepresentations, and/or failure to disclose material information concerning the Defect.

858.   Because Defendant Kia's conduct caused injury to Plaintiff's and the Wisconsin Class members' property through violations of the Wisconsin DTPA, Plaintiff and the Class members are entitled to damages and other relief provided for

under Wis. Stat. § 100.18(11)(b)(2), punitive damages, an order enjoining Defendant Kia's unfair or deceptive acts and practices, costs of Court, reasonable attorneys' fees, and any other just and proper relief available under the Wisconsin DTPA

### COUNT XLVIII
### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (WIS. STAT. § 402.314)

859.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

860.   Plaintiff brings this claim on behalf of the Wisconsin Class.

861.   Defendant Kia is and was at all relevant times a merchant with respect to motor vehicles.

862.   A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

863.   The Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles contain the Defect rendering the Vehicles unsafe and unreliable, and preventing users from enjoying many of the Vehicles' features that Class members paid for.

864.   Defendant Kia was provided notice of the Defect by, among other things, numerous complaints about it, including the instant Complaint, and by customer complaints, letters, emails, and other communications from Class members and from dealers and other repair facilities.

865.   As a direct and proximate result of Defendant Kia's breach of the warranties of merchantability, Plaintiff and the other Wisconsin Class members have been damaged in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class members, respectfully request judgment against Defendants as follows:

1    A.    certifying the proposed Nationwide Class and State Law Classes;

2    B.    appointing Plaintiffs and their counsel to represent the Classes;

3    C.    ordering injunctive relief, restitution, disgorgement, and/or other
4    appropriate relief;

5    D.    awarding compensatory, punitive, exemplary, and other recoverable
6    damages;

7    E.    awarding reasonable attorney's fees and expenses;

8    F.    awarding pre-judgment and post-judgment interest;

9    G.    awarding such other and further relief as this Court may deem just and
10   proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable.

Dated: November 16, 2022          Respectfully submitted,

                                  */s/ Christopher R. Pitoun*
                                  Christopher R. Pitoun (SBN 290235)
                                  **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                  301 North Lake Avenue, Suite 920
                                  Pasadena, California 91101
                                  Telephone: (213) 330-7150
                                  Facsimile: (213) 330-7152
                                  christopherp@hbsslaw.com

                                  Steve W. Berman (to be admitted pro hac vice)
                                  Sean R. Matt (to be admitted pro hac vice)
                                  **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                  1301 Second Avenue, Suite 2000
                                  Seattle, Washington 98101
                                  Telephone: (206) 623-7292
                                  Facsimile: (206) 623-0594
                                  steve@hbsslaw.com
                                  sean@hbsslaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jeffrey S. Goldenberg (to be admitted pro hac vice)
Todd Naylor (to be admitted pro hac vice)
**GOLDENBERG SCHNEIDER, LPA**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45249
Telephone: (513) 345-8291
Facsimile: (513) 345-8294
jgoldenberg@gs-legal.com
tnaylor@gs-legal.com

Joseph M. Lyon (to be admitted pro hac vice)
**THE LYON FIRM, LLC**
2754 Erie Avenue
Cincinnati, OH 45208
Telephone: (513) 381-2333
Facsimile: (513) 766-9011

*Counsel for Plaintiffs and Class*